FILED
COURT OF APPEALS
DIVISION II

2015 JUN 30 AM 8:30

STATE OF WASHINGTON
BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | | |
|---|---|---|
| TIMOTHY WHITE, | | No. 46081-5-II |
| | Appellant, | |
| v. | | |
| CLARK COUNTY, | | PUBLISHED OPINION |
| | Respondent. | |

MAXA, J. — Timothy White appeals the trial court's dismissal of his petition for Clark County (County) to show adequate cause for refusing to disclose scanned images of pre-tabulated election ballots pursuant to a Public Records Act (PRA)[1] request. He argues that the images were nonexempt public records subject to PRA disclosure. Article VI, section 6 of the Washington Constitution, various sections of Title 29A RCW, and secretary of state regulations adopted under express legislative authority make it clear that election ballots must be kept completely secure from the time of receipt through processing and tabulation. We hold that these provisions together constitute an "other statute" exemption to the PRA under RCW 42.56.070(1) and that the County did not violate the PRA by failing to disclose the pre-tabulated ballot images.

White also challenges the trial court's award of $1,500 in attorney fees to him for prevailing on his claim that the County failed to timely respond to his PRA request. He argues

---

[1] Chapter 42.56 RCW.

that the trial court erred by failing to conduct a lodestar analysis to determine the appropriate amount of attorney fees and to award costs. The trial court did not make findings of fact and conclusions of law regarding the amount of attorney fees awarded, and the record is otherwise insufficient to review the reasonableness of the trial court's award. Therefore, we remand for the entry of findings of fact and conclusions of law regarding the amount awarded for attorney fees.

Accordingly, we affirm the trial court's order dismissing the PRA action, but remand for entry of findings of fact and conclusions of law relating to the trial court's award of attorney fees to White.

## FACTS

*White's PRA Request*

On November 6, 2013, White sent the County a written request for "copies of electronic or digital image files of all *pre-tabulated* ballots received, cast, voted, or otherwise used in the County's current Nov. 5, 2013 General Election." Clerk's Papers (CP) at 27. He explained that the request should encompass "a digital copy of each electronic or digital ballot image file created or held by the county, and *before the ballot is tabulated*" and "the original metadata and Properties of the electronic or digital files requested." CP at 27.

White requested that the digital copies be in "the same electronic or digital file formats in which they were created or received or used [as well as] a format viewable on an up-to-date home computer." CP at 28. He expressly excluded from his request any original returned paper ballots, any return or security envelopes, hard copies of the digital images, and any images of the signatures of individual voters.

2

*County Ballot Processing Procedures*

The County receives election ballots that have been placed in security envelopes and then placed in return envelopes that contain the voter's certification. Upon receipt, the ballots are secured immediately and are accessible only for processing purposes. To process the ballots, election staff verifies signatures and postmarks and then removes and separates the ballots from their envelopes. The ballots then are scanned and digitally communicated to a computer running a software program called Ballot Now.[2] According to the County, the scanned images are converted to a proprietary format that only Ballot Now can read and process. The Ballot Now files are the records White requested: digital image files of pre-tabulated ballots.

After this initial processing has taken place, beginning at 8:00 PM on election day, the data from the Ballot Now program is transferred to a second computer running a software program called "Tally." CP at 74. This program tabulates the votes. Immediately after tabulation, the ballots are sealed and secured.

*County Response*

The County responded to White's PRA request by email on November 12. The email stated that the County was "unable to make the records available to you on such short notice" but that it "anticipate[d] that a response to all of your requests from November 6 and today will be available on or before Friday, November 22nd." CP at 32. White responded to the County's email the same day, explaining that his request for " 'untabulated' or 'pre-tabulated' [images] is

---

[2] Ballots that have been completed in an unusual manner, such as circling the name instead of filling in a box or filling in two boxes and crossing one off, can be "resolved" in the Ballot Now program under rules and guidance provided by the secretary of state. CP at 73. The resolution process allows these ballots to be reviewed and counted.

critical to avoid unnecessary application of allegedly complicating statutory provisions which only kick in after tabulation." CP at 32.

The County responded again by email the next day, stating that it "suspect[s] the Auditor will not be releasing copies of ballots, pre or post-tabulated, based on [RCW 29A.60 and RCW 42.56.070(2)]." CP at 31. The County ended this email by telling White it would "look into it and . . . be in touch on or before November 22." CP at 31. This was the last communication between the County and White on the subject. The County neither produced any responsive records for White's examination nor delivered an exemption log claiming application of any laws justifying nondisclosure.

*White Lawsuit*

On January 2, 2014, White filed a PRA action in the superior court, and moved for a show cause hearing. The trial court granted the motion and held a hearing on the merits of the action. Ultimately, the trial court denied White's request for relief under the PRA, ruling that the ballot images were protected from disclosure under the general statutory scheme of Title 29A RCW. However, the trial court awarded White $1,500 in attorney fees because the County inappropriately failed to respond as required under the PRA.

White appeals the trial court's order exempting the ballot images from production and the amount of the trial court's attorney fee award.

4

ANALYSIS

A.     PRA EXEMPTION FOR ELECTION BALLOTS

White argues that the County wrongfully failed to produce the pre-tabulated, scanned ballot images he requested. We disagree because election ballot images are exempt from disclosure under the PRA.[3]

1.     General Principles

An agency must disclose public records upon request unless those records are exempt. RCW 42.56.070(1). A requesting party denied disclosure may move for a show cause hearing, at which the burden of proof is on the agency to show that its denial was proper. RCW 42.56.550(1), (3). We review the agency's showing of cause de novo. RCW 42.56.550(3).

An agency may lawfully withhold production of records if a specific exemption applies. *Sanders v. State*, 169 Wn.2d 827, 836, 240 P.3d 120 (2010). There are three sources of PRA exemptions. First, the PRA itself contains certain enumerated exemptions. RCW 42.56.070(6), .210-.480; *Dep't of Transp. v. Mendoza de Sugiyama*, 182 Wn. App. 588, 596, 330 P.3d 209 (2014). Second, the PRA states that public records can be withheld from production if they fall within any "other statute which exempts or prohibits disclosure of specific information or records." RCW 42.56.070(1). An "other statute" exemption applies only if that statute explicitly identifies an exemption; the PRA does not allow a court to imply such an exemption.

---

[3] The County argues that the PRA is inapplicable here because the scanned images of pre-tabulated ballots that White requested do not exist in a producible format, and therefore it would have to create new documents to comply with the request. We assume without deciding that the PRA is applicable to the requested records. *See generally Fisher Broad.-Seattle TV LLC v. City of Seattle*, 180 Wn.2d 515, 524, 326 P.3d 688 (2014).

*Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 262, 884 P.2d 592 (1994) (*PAWS* II). Third, the Washington Constitution may exempt certain records from production because the constitution supersedes contrary statutory laws. *Freedom Found. v. Gregoire*, 178 Wn.2d 686, 695, 310 P.3d 1252 (2013).

However, the PRA mandates broad public disclosure. *Sargent v. Seattle Police Dep't*, 179 Wn.2d 376, 385, 314 P.3d 1093 (2013). Therefore, we must liberally construe the PRA in favor of disclosure and narrowly construe its exemptions to assure that the public interest in full disclosure of public information will be protected. RCW 42.56.030; *Fisher Broad.-Seattle TV LLC v. City of Seattle*, 180 Wn.2d 515, 521, 326 P.3d 688 (2014). The agency bears the burden of establishing that an exemption to production applies. RCW 42.56.550(1); *Sargent*, 179 Wn.2d at 385-86.

2.    Other Statute Exemption

The County argues that there are several sources of a PRA "other statute" exemption for images of pre-tabulated ballots. However, no single provision provides a comprehensive PRA exemption for ballot images. Instead, we hold that an "other statute" exemption derives from a combination of article VI, section 6 of the Washington Constitution, multiple sections of Title 29A RCW, and secretary of state regulations authorized by statute.

a.    Article VI, Section 6

Article VI, section 6 of the Washington Constitution mandates that "[t]he legislature shall provide for such method of voting as will secure to every elector absolute secrecy in preparing and depositing his ballot." The plain meaning of this provision is that the legislature must ensure that every person's vote – i.e., how the person voted – remains secret. *See State v. Carroll*, 78

6

Wash. 83, 85, 138 P. 306 (1914) ("The object of all constitutional provisions and laws providing for a vote by ballot is primarily to procure secrecy, and this the legislature is admonished to do in [article VI, section 6]."). However, nothing in article VI, section 6 expressly provides that the ballot itself must remain "secret" as long as the voter who cast that ballot cannot be identified. The provision expressly guarantees secrecy for every voter, not for the voters' ballots themselves.

If the identity of a voter could be determined by a review of certain ballots, article VI, section 6 would preclude production of those ballots. However, the County provided no evidence that production of the ballot images White requested would compromise voter secrecy.

      b.    Provisions of Title 29A RCW

The provisions of Title 29A RCW on which the County relies generally apply to "ballots." Initially, White argues that Title 29A RCW is inapplicable because the digital records he requested are not ballots, but are copies of ballots. However, RCW 29A.04.008(1)(c) provides that as used in Title 29A RCW, "ballot" includes a "physical or electronic record of the choices of an individual voter." Scanned images of pre-tabulated election ballots clearly qualify as electronic records of the choices of an individual voter. Therefore, the scanned ballot images White requested are "ballots" within the meaning of RCW 29A.04.008(1), and their handling is governed by Title 29A RCW.

Title 29A RCW is entitled "Elections." RCW 29A.04.206 states that "[t]he rights of Washington voters are protected by its constitution and laws" and include the fundamental right of "absolute secrecy of the vote." Like article VI, section 6, this provision focuses on protecting from disclosure how a person voted. *See Moyer v. Van De Vanter*, 12 Wash. 377, 382, 41 P. 60

(1895) ("[T]he general policy of the law is that the ballot shall be a secret one, that it may not be known for which candidate any particular voter voted in order that bribery may be prevented.").

However, the legislature also enacted provisions regarding the secrecy and security of the ballots themselves. RCW 29A.40.110(2) provides:

> All received return envelopes must be placed in secure locations from the time of delivery to the county auditor until their subsequent opening. After opening the return envelopes, the county canvassing board shall place all of the ballots in secure storage *until processing*. Ballots may be taken from the inner envelopes and all the normal procedural steps may be performed to prepare these ballots for tabulation.

(Emphasis added.) This statute addresses the period from when a county receives a ballot to when a county processes that ballot.

RCW 29A.40.110(2) is limited in scope because it clearly applies only before processing takes place. Secretary of state regulations identify two stages of "processing." WAC 434-250-110. "Initial processing" occurs when voter signatures are verified, the ballots are removed from the return and secrecy envelopes, and the ballots are inspected. WAC 434-250-110(1)(a)-(e). These appear to be the "normal procedural steps" necessary to prepare the ballots for tabulation referenced in RCW 29A.40.110(2). In addition, during this stage ballots are scanned into digital voting systems, such as the Ballot Now system. WAC 434-250-110(1)(f). During "final processing," these ballots are read by an optical scan voting system for the purposes of producing returns of votes cast, but are not tabulated. WAC 434-250-110(2).[4] All of these processing steps occur before the ballots are tabulated.

---

[4] Final processing may begin after 7:00 AM on election day or after 7:00 AM on the day before election day under a pre-approved security plan.

The security of election ballots after they have been tabulated is addressed in RCW 29A.60.110, which provides:

> Immediately *after their tabulation*, all ballots counted at a ballot counting center must be sealed in containers that identify the primary or election and be retained for at least sixty days or according to federal law, whichever is longer. . . . The containers may only be opened by the canvassing board as part of the canvass, to conduct recounts, to conduct a random check under RCW 29A.60.170, or by order of the superior court in a contest or election dispute.

(Emphasis added.) However, this statute also is limited in scope because it clearly applies only to ballots after they have been tabulated.

RCW 29A.40.110(2) and RCW 29A.60.110 constitute express "other statute" exemptions to the PRA. If ballots must be kept secure, they cannot be produced to a third person under the PRA. However, these statutes leave a "gap" in ballot security from the beginning of processing until tabulation. There are no statutes that expressly provide that processed but untabulated ballots must be kept secure.[5] And the records White requested – copies of ballot images generated during processing that had not yet been tabulated – fall within this gap.

### c. Secretary of State Regulations

The legislature expressly delegated to the secretary of state the authority to fill in the statutory gaps regarding the secrecy and security of ballots. In RCW 29A.04.611, the legislature directed the secretary of state to make reasonable rules to effectuate any provision of Title 29A

---

[5] The secretary of state in its amicus brief relies on RCW 29A.60.125(2), which provides for secure storage of all ballots "at all times, except during duplication, inspection by the canvassing board, or tabulation." Br. of Amicus Curiae Sec'y of State at 12. The secretary of state argues that this statute mandates security for all ballots. However, RCW 29A.60.125 is entitled "Damaged ballots" and clearly applies only to situations where a ballot is damaged and must be duplicated.

RCW. More specifically, in RCW 29A.04.611 the legislature *required* the secretary of state to make rules governing, among many other things, "[s]tandards and procedures to guarantee the *secrecy of ballots*." RCW 29A.04.611(34) (emphasis added).

The secretary of state's regulations adopted pursuant to this statutory authority address security for ballots that have been processed but have not yet been tabulated. WAC 434-250-110(5) expressly provides that untabulated ballots must be kept in secure storage until final processing. WAC 434-261-045 more generally provides that ballots and "ballot images" must be maintained in secure storage "except *during* processing." (Emphasis added.) These provisions clearly provide that untabulated scanned ballot images must be kept secure at all times except while the ballots are actually being processed.

The question here is whether these secretary of state regulations can provide the basis for a PRA exemption. In general, certain regulatory rules can be "other statutes" for purposes of PRA exemption. In *Ameriquest Mortgage Company v. Office of Attorney General*, our Supreme Court held that a federal statute "together with the [federal regulation] enforcing it" is an "other statute" under RCW 42.56.070(1). 170 Wn.2d 418, 440, 241 P.3d 1245 (2010). Similarly, in *Freedom Foundation v. Department of Transportation, Division of Washington State Ferries*, we held that confidentiality protections directed by a federal statute that are implemented by a federal regulation amount to an "other statute" exemption under RCW 42.56.070(1). 168 Wn. App. 278, 289, 276 P.3d 341 (2012).

Here, article VI, section 6 of the Washington Constitution directed the legislature to guarantee absolute secrecy of electors' votes. The legislature in turn recognized a fundamental right to absolute secrecy of the vote, RCW 29A.04.206(2), and enacted provisions to ensure

ballot security. The legislature expressly delegated to the secretary of state the authority to make reasonable rules to effectuate any provision of Title 29A RCW. RCW 29A.04.611. And the legislature required the secretary of state to make rules governing "[s]tandards and procedures to guarantee the secrecy of ballots." RCW 29A.04.611(34). The ballot security provisions of WAC 434-261-045 and WAC 434-250-110(5) were adopted pursuant to that authority. The secretary of state apparently determined that keeping ballots secure would help ensure their secrecy.

White argues that administrative regulations cannot exempt records from disclosure under the PRA. He cites *Servais v. Port of Bellingham*, where our Supreme Court stated that an agency cannot be allowed to determine what records are exempt from the PRA. 127 Wn.2d 820, 834, 904 P.2d 1124 (1995). The court stated that " '[l]eaving interpretation of the act to those at whom it was aimed would be the most direct course to its devitalization.' " *Id.* (quoting *Hearst Corp. v. Hoppe*, 90 Wn. 2d 123, 131, 580 P.2d 246 (1978)).

But *Servais* and *Hoppe* do not address whether regulations can qualify as "other statutes" that can create a PRA exemption. Instead, our Supreme Court simply rejected the idea that agencies could interpret or directly regulate the applicability of the PRA to protect records from disclosure. *Servais*, 127 Wn.2d at 834-35; *Hoppe*, 90 Wn.2d at 129-30. The situation here is different because the secretary of state did not attempt to regulate disclosure directly or interpret the disclosure requirements of the PRA. Instead, the secretary of state implemented regulations to ensure ballot security and secrecy during processing, pursuant to the express enabling provisions of RCW 29A.04.611.

We hold that under *Ameriquest* and *Freedom Foundation*, WAC 434-261-045 and WAC 434-250-110(5) create an "other statute" exemption to the PRA under RCW 42.56.070(1) for pre-tabulated ballot images.

3. Conclusion

The legislature has enacted statutes, and the secretary of state has adopted regulations pursuant to statutory authority, providing that ballots and ballot images must be kept secure at all times from receipt until at least 60 days after tabulation.[6] Because these provisions are inconsistent with producing copies of ballots and ballot images to a third person under the PRA, they constitute an express "other statute" exemption for ballots and ballot images under RCW 42.56.070(1). Accordingly, we hold that the County did not violate the PRA by refusing to produce the images of pre-tabulated ballots that White requested under the PRA.[7]

B. DISREGARDING THE PRA EXEMPTION

White argues that even if we hold that the records were exempt, the County was obligated to produce them because nondisclosure was not necessary to protect privacy or a vital government function. We disagree.

---

[6] In its amicus brief, the Washington Coalition for Open Government argues that RCW 29A.60.110 only prohibits ballot access without a court order during the 60-day retention period, and therefore the County was required to produce the ballot images after that 60-day period expired. However, we decline to address this argument because it was raised solely in an amicus brief. *Kitsap County v. Kitsap Rifle & Revolver Club*, 184 Wn. App. 252, 303, 337 P.3d 328 (2014), *petition for review filed*, No. 91056-1 (Wash. Dec. 2, 2014).

[7] White argues that we should consider the persuasive value of two 2011 cases from other jurisdictions: *Marks v. Koch*, 284 P.3d 118, 123 (Colo. 2011); *Price v. Town of Fairlee*, 190 Vt. 66, 26 A.3d 26, 31 (2011). Because the facts and the law governing ballot access in those cases are not similar to the facts and law here, we do not look to those cases for guidance.

"[E]ven records that are otherwise exempt may be inspected or copied if a court finds 'that the exemption of such records is clearly unnecessary to protect any individual's right of privacy or any vital governmental function.' " *Resident Action Council v. Seattle Hous. Auth.*, 177 Wn.2d 417, 433, 327 P.3d 600 (2013) (quoting RCW 42.56.210(2)). Such a finding operates to override a categorical PRA exemption, requiring the agency to produce the records. *Resident Action Council*, 177 Wn.2d at 434.

Here, the constitutional provisions, statutes, and regulations upon which the County claims an exemption protect both the secrecy of persons' votes and the security of election ballots. As discussed above, article VI, section 6 the Washington Constitution recognizes a right to the secrecy of the vote. Title 29A RCW, WAC 434-261-045, and WAC 434-250-110(5) set procedures and requirements that protect this right and to keep ballots secure. Preserving the integrity and secrecy of votes and the security of election ballots clearly is a vital government function.

Accordingly, we reject White's argument that the PRA exemption for scanned images of pre-tabulated ballots should be disregarded in this case.

C.    ATTORNEY FEES

1.    Trial Court Attorney Fees Award

White claims that the trial court erred by awarding him attorney fees without conducting a lodestar analysis or awarding him his costs. We agree.

RCW 42.56.550(4) requires a trial court to award attorney fees to a petitioner who prevails in a PRA action:

> Any person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record *or the right to receive a response to a public record request within a reasonable amount of time* shall be awarded *all costs*, including *reasonable attorney fees*, incurred in connection with such legal action.

(Emphasis added.) When awarding attorney fees to a prevailing PRA petitioner, a trial court generally should use the lodestar method – multiplying a reasonable number of hours worked on the case by a reasonable hourly fee – to calculate the award amount. *Sanders*, 169 Wn.2d at 869. A trial court awarding attorney fees in this manner may adjust the resulting amount upward or downward. *Id.*

We review a trial court's award of attorney fees for an abuse of discretion. *Cook v. Brateng*, 180 Wn. App. 368, 375, 321 P.3d 1255 (2014) A trial court abuses its discretion regarding the amount of attorney fees when its decision is manifestly unreasonable, based on untenable grounds, or made for untenable reasons. *Id.*

For any attorney fees award, the trial court must articulate the grounds for the award, making a record sufficient to permit meaningful review. *See Mahler v. Szucs*, 135 Wn.2d 398, 435, 957 P.2d 632 (1998); *Berryman v. Metcalf*, 177 Wn. App. 644, 659, 312 P.3d 745 (2013), *review denied sub nom., Berryman v. Farmers Ins. Co.*, 179 Wn.2d 1026 (2014). This generally means that the trial court "must supply findings of fact and conclusions of law sufficient to permit a reviewing court to determine why the trial court awarded the amount in question." *SentinalC3, Inc. v. Hunt*, 181 Wn.2d 127, 144, 331 P.3d 40 (2014); *see also Mahler*, 135 Wn.2d at 435. If the trial court does not make findings of fact and conclusions of law supporting the attorney fees award, the preferred remedy is to remand to the trial court for entry of proper findings and conclusions. *Berryman*, 177 Wn. App. at 659.

The trial court here awarded White partial attorney fees because he prevailed on his claim that the County had violated PRA procedures by failing to fully respond to his request. In its ruling, the trial court explained only that

> Plaintiff is the prevailing party only on the issue of Clark County's failure to fully comply with its PRA response requirements. The court grants plaintiff reasonable attorney fees in the amount of $1,500 as prevailing party on this issue.

CP at 124. The trial court did not provide any findings of fact or conclusions of law regarding the amount of the attorney fees award. It did not conduct a lodestar analysis on the record or otherwise articulate how it arrived at the $1,500 figure. And it also appears that the trial court did not award any amount for White's costs other than attorney fees.

We hold that the record is insufficient to permit meaningful review of the trial court's analysis. Therefore, we remand for entry of findings of fact and conclusions of law related to the amount of attorney fees awarded, and for an award of appropriate costs.

2.    Attorney Fees on Appeal

White requests attorney fees on appeal. RCW 42.56.550(4) entitles a PRA petitioner who prevails on appeal to an award for costs and attorney fees incurred. *PAWS* II, 125 Wn.2d at 271.

A petitioner prevails in a PRA action when the court determines that the agency wrongfully failed to disclose the requested records or otherwise violated the PRA. *Spokane Research & Def. Fund v. City of Spokane*, 155 Wn.2d 89, 103, 117 P.3d 1117 (2005); *Haines-Marchel v. Dep't of Corr.*, 183 Wn. App. 655, 674, 334 P.3d 99 (2014); *see also Citizens For Fair Share v. Dep't of Corr.*, 117 Wn. App. 411, 437, 72 P.3d 206 (2003). We hold that the County was not required to produce the ballot images responsive to White's request, but that the trial court erred by failing to properly support its award for attorney fees below. Therefore,

15

White prevailed only on a relatively minor related issue, and we do not award attorney fees to him on appeal.[8]

We affirm the trial court's order dismissing White's PRA action, but remand for entry of findings of fact and conclusions of law relating to the trial court's award of attorney fees to White.

MAXA, J.

We concur:

WORSWICK, P.J.

LEE, J.

---

[8] White asks us to impose per diem penalties against the County. However, because we hold that the County did not violate the PRA by not producing the requested ballot images, White is not entitled to a PRA penalty.

16