# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JOHN J. HADALLER, an individual, | No. 46094-7-II |
| Appellant, | Consolidated with |
| v. | No. 47074-8-II |
| DAVID A. and SHERRY LOWE, individually and the marital community thereof; RANDY FUCHS, an individual; CLIFFORD L. and SHEILAH SCHLOSSER, individually and the marital community thereof; MAURICE L. and CHERYL C. GREER, individually and the marital community thereof; MAYFIELD COVE ESTATES HOMEOWNERS ASSOCIATION, a non-profit corporation, | |
| Respondents, | |
| LEWIS COUNTY TITLE COMPANY, a Washington corporation; | UNPUBLISHED OPINION |
| Defendants. | |

WORSWICK, J. — This is the second time we have addressed issues in a contentious relationship between John J. Hadaller and Mayfield Cove Estates Homeowners Association.[1] In a prior appeal, we affirmed a declaratory judgment in favor of the Association and awarded attorney fees and costs against Hadaller. After remand, Hadaller refused to comply with the judgment, and the HOA proceeded to foreclose a lien on his property.

---

[1] Hadaller has filed a number of appeals in related litigation. *See Mayfield Cove Estates Homeowners Ass'n v. Hadaller*, noted at 166 Wn. App. 1036, 2012 WL 628206; *Rockwood v. Hadaller*, noted at 168 Wn. App. 1003, 2012 WL 1655946; *Hadaller v. Lowe*, noted at 175 Wn. App. 1062, 2013 WL 3963733.

No. 46094-7-II;
Cons. 47174-8-II

Hadaller now appeals the trial court's 2011 attorney fee award, February 2014 decree of foreclosure and order of sale, and December 2014 supplemental judgment in favor of the Association. Hadaller argues (1) the trial court misinterpreted RCW 6.13.080(6) by concluding that his homestead was subject to the Association's lien because (a) he did not receive proper notice from the Association and (b) the covenant permitting the lien was in place after he acquired title, (2) the trial court failed to make a record sufficient to permit meaningful appellate review of its 2011 attorney fee award, and (3) we should review our earlier decision in *Mayfield Cove Estates Homeowners Ass'n v. Hadaller*, noted at 166 Wn. App. 1036, 2012 WL 628206. We decline Hadaller's invitation to revisit our earlier decision, and we affirm the trial court in all respects.

FACTS

On January 10, 2002, John J. Hadaller obtained title to property in Lewis County. In 2003, Hadaller developed the property into residential lots and recorded a "Declaration of Covenants, Conditions, Restrictions, Road Maintenance Agreement, Water System" for the lots. 3 Suppl. Clerk's Papers (CP) at 323. Hadaller named the development Mayfield Cove Estates. Between 2003 and 2007, Hadaller sold a number of the lots, and the Mayfield Cove Estates Homeowners Association incorporated on September 3, 2008, and began assessing annual fees.

Beginning in 2008, Hadaller refused to pay the Association's annual assessments. On July 3, 2009, the Association held its annual meeting and voted to adopt amended CCRs (2009 CCRs). The 2009 CCRs provided for special assessments in addition to the Association's annual assessments and created a continuing lien against properties for unpaid assessments, costs, and attorney fees. Further, the 2009 CCRs permitted the Association "to enforce, by any proceeding

2

at law or in equity, all restrictions, conditions, covenants, reservations, assessments, [and] liens . . . imposed by the provisions of these CCRs" and entitled the prevailing party to reasonable costs and attorney fees in any action brought under the CCRs. 3 Suppl. CP at 399.

Hadaller filed a lawsuit against the Association and the homeowners in the Association for, among other things, declaratory judgment, quiet title, and nuisance. The Association filed counterclaims for conversion, breach of contract, misrepresentation, and violation of the 2009 CCRs. In June 2011, following a bench trial, the trial court ruled in favor of the Association and awarded the Association attorney fees and costs for overdue special and annual assessments. The trial court entered findings of fact and conclusions of law in support of its award.

Hadaller continued to refuse to pay the Association's special and annual assessments. On December 26, 2012, the Association notified Hadaller that nonpayment of his assessments could result in foreclosure of the Association's lien, as provided in RCW 6.13.080(6),[2] and that the homestead exemption in RCW 6.13.070[3] would not apply to the foreclosure action. On February 19, 2014, the Association filed a motion with the trial court to enter a decree of foreclosure and

---

[2] RCW 6.13.080(6) states:
> In order for an association to be exempt [from the homestead exception] under this provision, the association must have provided a homeowner with notice that nonpayment of the association's assessment may result in foreclosure of the association lien and that the homestead protection under this chapter shall not apply. . . . The notice required in this subsection shall be given within thirty days from the date the association learns of a new owner, but in all cases the notice must be given prior to the initiation of a foreclosure.

[3] "Except as provided in RCW 6.13.080, the homestead is exempt from . . . forced sale for the debts of the owner." RCW 6.13.070(1).

3

order of sale against Hadaller's property and to supplement its 2011 award of unpaid assessments and attorney fees.

At the hearing on the Association's motion, Hadaller argued that the Association failed to give him proper notice of foreclosure under RCW 6.13.080(6) because he was a "new owner" under the statute and did not receive notice within 30 days of acquiring title to his property. The trial court disagreed and, on February 28, entered a decree of foreclosure and order of sale.

Hadaller filed a number of motions for reconsideration, arguing that he did not receive proper notice under RCW 6.13.080(6) and that the trial court erred in awarding attorney fees to the Association in its 2011 judgment because the trial court did not itemize which fees were awarded to each individual homeowner in the Association. The trial court denied Hadaller's motions, stating they were untimely and that it would not revisit its 2011 judgment. At a later hearing, the trial court granted the Association's motion for supplemental judgment and ordered Hadaller to pay supplemental attorney fees. Hadaller appeals the February 28 decree of foreclosure and order of sale and the December 19 supplemental judgment and order of attorney fees.

## ANALYSIS

### I. STATUTORY INTERPRETATION

Hadaller argues the trial court misinterpreted RCW 6.13.080(6) by concluding that his homestead was subject to the Association's lien because (a) he did not receive proper notice from the Association and (b) the covenant permitting the lien was in place after he acquired title. We disagree.

4

We review interpretation of a statute de novo. *Jametsky v. Olsen*, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014). When engaging in statutory interpretation, we endeavor to determine and give effect to the legislature's intent. 179 Wn.2d at 762. In determining the legislature's intent, we must first examine the statute's plain language and ordinary meaning. 179 Wn.2d at 762. Legislative definitions included in the statute are controlling, but in the absence of a statutory definition, we give the term its plain and ordinary meaning as defined in the dictionary. *American Cont'l Ins. Co. v. Steen*, 151 Wn.2d 512, 518, 91 P.3d 864 (2004). In addition, we consider the specific text of the relevant provision, the context of the entire statute, related provisions, and the statutory scheme as a whole when analyzing a statute's plain language. *Lowy v. PeaceHealth*, 174 Wn.2d 769, 779, 280 P.3d 1078 (2012).

If there is more than one reasonable interpretation of the plain language, the statute is ambiguous. *Jametsky*, 179 Wn.2d at 762. When a statute is ambiguous, we resolve ambiguity by engaging in statutory construction and considering other indications of legislative intent. 179 Wn.2d at 762. However, if the statute is unambiguous, we apply the statute's plain meaning as an expression of legislative intent without considering other sources. 179 Wn.2d at 762.

A "homestead consists of real or personal property that the owner uses as a residence." RCW 6.13.010(1). Notwithstanding RCW 6.13.080, a homestead is "exempt from . . . forced sale for the debts of the owner." RCW 6.13.070(1). Accordingly, the homestead exemption is not available against a forced sale for debts specified in RCW 6.13.080.

RCW 6.13.080 provides statutory exceptions from homestead protection for certain kinds of debt, which include exceptions for debts secured by mechanic's liens, mortgages on the property, child support orders, or debts owed for taxes. Under one exception, a homeowners'

5

association is not subject to the homestead exemption when "the association . . . [has] provided a homeowner with notice that nonpayment of the association's assessment may result in foreclosure of the association lien and that the homestead protection . . . shall not apply." RCW 6.13.080(6). To qualify under this exception, a homeowners' association must give notice "within thirty days from the date the association learns of a new owner, but in all cases the notice must be given prior to the initiation of a foreclosure." RCW 6.13.080(6). "Failure to give the notice specified in [RCW 6.13.080(6)] affects an association's lien only for debts accrued up to the time an association complies with the notice provisions under [RCW 6.13.080(6)]." RCW 6.13.080(6).

Looking to the statutory scheme, chapter 6.13 RCW defines an "owner" as "a purchaser under a deed of trust, mortgage, or real estate contract." RCW 6.13.010(2). An association "learns of a new owner" for purposes of RCW 6.13.080(6) when it has "actual knowledge of the identity of a homeowner acquiring title." RCW 6.13.080(6).

Hadaller obtained title to his property on January 10, 2002. The Association formed in 2003, and all homeowners except Hadaller voted to incorporate the Association on September 3, 2008. On July 3, 2009, the Association voted to adopt the 2009 CCRs. The 2009 CCRs included a provision allowing the Association to levy special assessments in addition to annual assessments.

Following the trial court's order that the Association was entitled to collect annual and special assessments from Hadaller, the Association mailed Hadaller notice that nonpayment may lead to foreclosure to satisfy the Association's lien. Hadaller received this notice on December 29, 2012, and the Association commenced its foreclosure action on February 19, 2014.

6

At the hearing on the Association's motion for supplemental judgment and decree of foreclosure, the trial court determined Hadaller had received proper notice under RCW 6.13.080(6) because Hadaller was not a "new owner" under the statute. As a result, the court concluded that "[t]he only notice that the statute requires [the Association] to give [Hadaller] is before foreclosure. They have to give [him] notice that they are asserting that [his] assessments have not been paid and [he] need[s] to bring them current or they are going to foreclose." Verbatim Report of Proceedings (Feb. 28, 2014) at 22.

A.     *Notice Requirement*

Hadaller argues that notice of the potential foreclosure was defective because he was a "new owner," and he urges us to hold that an existing homeowner must be considered a "new owner" under RCW 6.13.080(6) when a homeowners' association forms or incorporates. Thus, he argues that the Association was required to give him notice within 30 days of its incorporation. We disagree.

The plain language of RCW 6.13.080(6) requires that a homeowners' association give notice of its ability to foreclose on an association's lien within 30 days of learning of a new owner. A homeowners' association learns of a new owner when it has actual knowledge of the identity of an owner acquiring title. RCW 6.13.080(6). A related statute, RCW 6.13.010(2), provides that an "owner" includes a purchaser, like Hadaller, who acquires title by deed of trust. However, neither RCW 6.13.080 nor RCW 6.13.010 defines the term "new." *Webster's Dictionary* defines "new" as "having existed or having been made but a short time" and "recently manifested, recognized, or experienced." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1522 (2002). Thus, a homeowners' association must give a recent purchaser who

7

acquires title notice of its ability to foreclose within 30 days of obtaining actual knowledge of the recent purchaser's identity.

By its plain language, RCW 6.13.080(6) provides an alternative notice requirement. RCW 6.13.080(6) states that "in all cases the notice must be given prior to the initiation of a foreclosure." Accordingly, a homeowners' association must provide all homeowners, new and existing, with notice of its ability to foreclose on an association's lien before commencing a foreclosure action. Further, looking at the context of the entire statute, the provision in RCW 6.13.080(6) that states that failure to comply with the statute's notice requirements "affects an association's lien only for debts accrued up to the time an association complies with the notice provisions" implies that notice can also be given after initiating foreclosure proceedings.

Here, the statutory language of RCW 6.13.080(6) is unambiguous. RCW 6.13.080(6) requires that a homeowners' association give a new owner notice of its ability to foreclose within 30 days of learning of the new owner. The statute is clear that an existing homeowners' association learns of a new homeowner only *after* the homeowner acquires title. Moreover, a homeowners' association cannot provide notice within 30 days of learning of a new homeowner when the homeowner acquires title *before* the association forms or is incorporated. As a result, the statute provides that an association must provide notice to existing homeowners before initiating foreclosure proceedings.

Hadaller acquired title to his property before the Association formed and incorporated. As a result, Hadaller was not a "new owner," and RCW 6.13.080(6) required the Association to give Hadaller notice before it initiated foreclosure proceedings. Hadaller received notice from the Association approximately 13 months before it commenced this foreclosure action.

8

Therefore, the trial court did not misinterpret RCW 6.13.080(6) in determining that Hadaller received proper notice from the Association.

B.      *Special Assessment Lien*

In addition, Hadaller argues that the term "acquiring title" in RCW 6.13.080(6) implies that when a homeowner association's covenant providing for a lien is adopted after a homestead is established, the homestead is exempt from foreclosure to satisfy that lien. Specifically, Hadaller argues that RCW 6.13.080(6) does not permit the Association to foreclose on the special assessment lien authorized by the 2009 CCRs because Hadaller established his homestead before the Association adopted the covenant providing for the lien. We disagree.

As discussed above, RCW 6.13.080(6) is plain and unambiguous. RCW 6.13.080(6) provides that the homestead exemption is not available against debts secured by a homeowner association's lien. A homeowners' association must provide proper notice for this exception to the homestead exemption to apply.

RCW 6.13.080(6) does not define the exceptions to the homestead exemption in terms of when the homestead was established or when the covenants providing for an association's lien went into effect. Reading the statute as a whole, it is clear that other debts exempted by RCW 6.13.080, such as a mechanic's lien or child support orders, may arise after a homestead is established. As a result, the statute anticipates that the exception to the homestead exemption will still apply to debts secured after a homeowner acquires title and establishes his homestead. Because RCW 6.13.080(6) does not define a homeowner association's debts in terms of when the homestead was established, it is reasonable to conclude that the statute permits a foreclosure action for all debts secured by the lien, before or after the homestead is established.

9

The Association provided proper notice to Hadaller, and the plain meaning of RCW 6.13.080(6) does not exempt a homestead established before an association adopts covenants providing for a lien. Accordingly, the homestead exemption is not available to Hadaller. Therefore, the trial court did not misinterpret RCW 6.13.080(6) when it determined that Hadaller's homestead was not exempt from the Association's foreclosure action to satisfy its lien for special assessments.

## II. ATTORNEY FEES

Hadaller also argues the trial court erred by failing to make a record sufficient to permit meaningful appellate review of its 2011 attorney fee award because the court awarded fees to the Association and did not itemize which fees were awarded to the homeowners in the Association. We disagree.

We review whether there is a legal basis for awarding attorney fees de novo. *Gander v. Yeager*, 167 Wn. App. 638, 647, 282 P.3d 1100 (2012). A trial court may award attorney fees only where there is a basis in statute, contract, or recognized ground in equity. *Cmty. Ass'n Underwriters of America, Inc. v. Kalles*, 164 Wn. App. 30, 38, 259 P.3d 1154 (2011). When awarding attorney fees, the trial court must make a record sufficient to permit meaningful review by articulating the grounds for the award. *White v. Clark County*, 188 Wn. App. 622, 639, 354 P.3d 38 (2015), *review denied*, 185 Wn.2d 1009 (2016). Accordingly, the trial court must "supply findings of fact and conclusions of law sufficient to permit a reviewing court to determine why the trial court awarded the amount in question." *SentinelC3, Inc. v. Hunt*, 181 Wn.2d 127, 144, 331 P.3d 40 (2014). An award of attorney fees that is not supported by an adequate record will be remanded for entry of proper findings of fact and conclusions of law that

10

explain the basis for the award. *Berryman v. Metcalf*, 177 Wn. App. 644, 659, 312 P.3d 745 (2013).

Under RCW 64.38.020(4), a homeowners' association may "[i]nstitute, defend, or intervene in litigation or administrative proceedings in its own name on behalf of two or more owners on matters affecting the homeowners' association." RCW 64.38.050 also permits an award of attorney fees to the prevailing party for a violation of the "Homeowner Association Act." Here, the 2009 CCRs permit the Association "to enforce, by any proceeding at law or in equity, all restrictions, conditions, covenants, reservations, assessments, [and] liens . . . imposed by the provisions of these CCRs" and states that the Association is entitled to reasonable costs and attorney fees if it is the prevailing party in any action brought under the CCRs. 3 Suppl. CP at 399.

Following the 2011 bench trial, the Association filed a cost bill in support of an award of attorney fees. On June 10, 2011, the trial court entered its findings of fact and conclusions of law, awarding the Association attorney fees and costs. The court determined that the Association was the aggrieved, prevailing party and that attorney fees were authorized and appropriate under RCW 64.38.050 and the 2009 CCRs.

As an initial matter, the trial court did not err in awarding the Association attorney fees because the Association was entitled to the fees under the 2009 CCRs and RCW 65.38.050 as the prevailing party in the 2011 bench trial. In addition, the trial court made its findings of fact and conclusions of law explaining at length its basis for awarding the Association attorney fees. Accordingly, the trial court made a sufficient record of its award. Further, because the Association was permitted to defend the homeowners in the 2011 action under RCW

11

64.38.020(4), the homeowners were not individually entitled to attorney fees. Therefore, the trial court did not err in failing to itemize the fees awarded to the homeowners because the fees were awarded only to the Association.

### III. LAW OF THE CASE DOCTRINE

Hadaller also argues that we should exercise our discretion under RAP 2.5(c)(2) to review our earlier decision in *Mayfield* because this court erred in determining that the Association's amended covenants were invalid and unenforceable under the statute of frauds. We decline to exercise our discretion to review this decision.

The law of the case doctrine is codified in RAP 2.5(c)(2). *Folsom v. County of Spokane*, 111 Wn.2d 256, 264, 759 P.2d 1196 (1988). Under RAP 2.5(c)(2), an appellate court may review an earlier appellate decision in the same case. Washington courts have interpreted RAP 2.5(c)(2) as permitting an appellate court to revisit a previous decision when (1) "the prior decision is clearly erroneous, and the erroneous decision would work a manifest injustice to one party"; and (2) "where there has been an intervening change in controlling precedent between trial and appeal." *Roberson v. Perez*, 156 Wn.2d 33, 42, 123 P.3d 844 (2005).

Hadaller contends that our decision in *Mayfield* results in a manifest injustice because it enables the Association to commit fraud against him. Despite this, Hadaller does not cite a controlling change in precedent, and he does not argue that our decision was clearly erroneous. Accordingly, the law of the case doctrine is not implicated under these circumstances. Therefore, we decline to exercise our discretion under RAP 2.5(c)(2) to review our earlier decision in *Mayfield*.

12

No. 46094-7-II;
Cons. 47174-8-II

We affirm the trial court's 2011 attorney fee award, February 2014 decree of foreclosure and order of sale, and December 2014 supplemental judgment in favor of the Association.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Maxa, A.C.J.

Sutton, J.

13