# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

TIMOTHY WHITE, ALLAN ROSATO, )
LINDA ORGEL, ARTHUR GRUNBAUM, )
and GREEN PARTY OF SAN JUAN )
COUNTY, )
               Appellants, )
)
      v. )
)
KIM WYMAN†, individually and in her )
capacity as the Secretary of State for )
the State of Washington, MILENE )
HENLEY, in her capacity as San Juan )
County Auditor, and SAN JUAN )
COUNTY, )
)
            Respondents. )

No. 77156-6-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: August 6, 2018

TRICKEY, J. — Timothy White and other residents (collectively White) of San Juan County (the County) challenged the County's use of the Mail in Ballot Tracker (MiBT) computer system and unique ballot identifier (UBI) on election ballots.[1] White argued that the use of UBIs violates the constitutional and statutory rights to ballot secrecy. The trial court found that the use of UBIs was not a per se violation of article VI, section 6 of the Washington Constitution or state statute. We agree

---

† At the time of filing, the secretary of state was Sam Reed. Kim Wyman was elected as secretary of state in November 2012 and currently occupies this office. The San Juan County Superior Court entered an order substituting parties pursuant to CR 25(c) on February 7, 2013.

[1] There are three bar codes on each ballot. Only one bar code is at issue in this case, the unique ballot identifier. The unique ballot identifier is a serial bar code located at the bottom left corner of a ballot and is related to the Hart tabulation system. White correctly notes that the Hart tabulation system does not require a UBI for proper functionality.

and affirm the decision of the trial court.

## FACTS

During the highly contested 2004 election for Washington State Governor, election officials in six counties discovered hundreds of misplaced mail in ballots.[2] Additional election issues arose as some counties tallied more mail in ballots than the number of voters recorded as voting by mail, while other precincts recorded more voters than ballots. These problems revealed a need for improvement in the tracking and accounting of ballots. In response, the County implemented two separate systems, the MiBT system and UBIs, to increase the reliability and security of elections.

The County implemented the MiBT as part of a pilot program for the 2005 general election. A unique bar code that identified the voter was printed on the exterior of each ballot's mailing envelope. A scan of this bar code allowed the County to determine the appropriate outgoing ballot to mail to a particular voter and then record that the ballot was mailed to that voter. This system allowed the County to ensure that voters received ballots with the correct offices and propositions for their precinct.

The use of the bar code on the envelopes also improved accountability by maintaining a record of which voters returned their ballots. On incoming voted ballots, the bar code on the outer mailing envelope was scanned to record that the ballot had been returned. Additionally, the MiBT enabled the County to efficiently identify ballot voters for verification of their signatures and registration.

---

[2] See In re Coday, 156 Wn.2d 485, 489, 130 P.3d 809 (2006).

Prior to July 2008, the MiBT program used encryption to store a voter's identity and linked the voter's identity to the bar code printed on his or her ballot. This gave individual voters the ability to track their own ballots through the voting process. Due to concerns about ballot secrecy, the secretary of state directed all counties to discontinue this practice after July 2008. Counties using the MiBT computer program were required to install a programing patch to prevent any linkage between a voter and a particular ballot. After installation of this patch, the MiBT no longer stored voter identification with the ballot record, thereby eliminating the ability to link a specific ballot to an individual voter.

In addition to the MiBT bar code on the exterior envelope, the County employed a separate UBI on each ballot. The UBI was a serial bar code printed on each ballot at the time of issuance. During ballot assembly, the MiBT bar code on the exterior envelope and the UBI were both scanned to confirm that the voter would receive the correct ballot.

Upon a ballot's return, the County scanned its UBI to register that the ballot had been received and was ready for the tally. A final scan of the UBI registered the ballot's delivery for tabulation and entry into the separate tally system. The UBIs prevented multiple tabulations of the same ballot and allowed for efficient reconciling of the number of ballots tabulated with the number of voters credited with returning a ballot.

Unlike the MiBT system, UBIs were never stored in a way that could link the bar codes to identifying information about individual voters. No record of the UBI or name or registration number of the voter was retained at any step in the process.

3

Because the UBI was not linked to a voter, it could not be used to identify a voter.

In July 2009, Timothy White, Allan Rosato, Linda Orgel, Arthur Grunbaum, and the Green Party of San Juan County (collectively White) petitioned directly to the Washington State Supreme Court for a writ of mandamus against the Washington secretary of state and San Juan County. This petition challenged the use of UBIs as a violation of the constitutional and statutory rights to a secret ballot. The petition also alleged that the secretary of state had failed to properly test and certify the MiBT system as required by law. A commissioner of the Supreme Court determined that the original action was not properly before the court and transferred the case to San Juan County Superior Court for a decision on the merits.[3]

In November 2011, White moved for partial summary judgment on several issues, including whether UBIs violated the constitutional and statutory guarantees of an absolutely secret ballot and whether the secretary of state had failed to properly certify the MiBT system.[4] In their responses to this motion, the secretary of state and the County both requested summary judgment in their favor.

The trial court issued a letter ruling denying summary judgment for all parties in May 2012. The trial court found that UBIs were not a per se violation of Washington's constitutional or statutory provisions pertaining to secret ballots.

---

[3] After the transfer to San Juan County Superior Court, White requested consolidation with a separate lawsuit filed by Timothy White, Allan Rosato, and the Green Party of San Juan County against San Juan County in 2006. That suit also challenged the use of UBIs on election ballots as a violation of the constitutional and statutory rights to a secret ballot. The trial court granted the motion to consolidate.

[4] White also requested summary judgment on the issue of the secretary of state's failure to certify the MiBT system.

According to the trial court, ballot secrecy was preserved unless a UBI disclosed the identity of the person who voted the ballot. As a result, White had the burden of establishing this "linkage" between a UBI and a voter's identity in order to demonstrate a violation of the right to ballot secrecy.

The trial court concluded that White had not demonstrated that the UBIs permitted the identification of voters and denied his motion for summary judgment. The trial court also concluded it could not rule on the MiBT system certification issue without evidence of linkage. Finally, the trial court denied the secretary of state and the County's request for summary judgment as to whether the factual issue of linkage could be decided as a matter of law.

White moved for reconsideration of the decision concerning the certification of the MiBT system. On reconsideration, the trial court determined that the UBI and MiBT certifications were two distinct issues, and that the MiBT was part of the voting system that required certification. Because the parties all agreed that the MiBT system had not been certified, the trial court granted White's reconsideration. The trial court entered a stipulated order granting a permanent injunction against the use of MiBT unless the secretary of state certified the system. The trial court also determined that this use of an uncertified program in some counties resulted in disparate treatment and a violation of equal protection.

White did not pursue further litigation to prove the linkage necessary for the as applied challenge that the UBIs in fact disclosed the identity of the voters.[5] In

_____

[5] In an as applied challenge, a party alleges that application of the statute in a specific context is unconstitutional. City of Redmond v. Moore, 151 Wn.2d 664, 669, 91 P.3d 875 (2004). A per se or facial challenge, "is one where no set of circumstances exists in which

March 2016, White filed a motion to voluntarily dismiss the as applied challenge to UBIs. The trial court affirmed the ruling that the UBIs did not constitute a per se violation of the constitutional or statutory rights to ballot secrecy, granted the voluntary dismissal, and entered judgment.[6]

White appeals the trial court's ruling that UBIs are not a per se violation of Washington's constitutional and statutory rights to ballot secrecy.

## ANALYSIS

### Right to a Secret Ballot

White claims that the County's use of UBIs violated voters' rights to ballot secrecy under article VI, section 6 of the Washington Constitution, RCW 29A.08.161, and RCW 29A.36.111. The secretary of state and the County argue that UBIs are only prohibited if they lead to the identification of individual voters.

___

the statute, as currently written, can be constitutionally applied." Moore, 151 Wn.2d at 669.

[6] The order was written as a denial of White's motion for partial summary judgment. Generally, a denial of summary judgment is not appealable as a final judgment under RAP 2.2(a); see DGHI Enters. v. Pacific Cities, Inc., 137 Wn.2d 933, 949, 977 P.2d 1231 (1999). In this case, the denial of partial summary judgment was effectively a grant of summary judgment for the secretary of state and the County on the per se claim. White moved for voluntary dismissal of the remaining as applied challenge and the order and judgment terminated all issues and controversies. As a result, the denial of summary judgment "settle[s] all issues in the case" and is a final judgment for the purposes of appeal. See In re Det. of Turay, 139 Wn.2d 379, 392, 986 P.2d 790 (1999).

The record shows that the trial court and the parties intended for the issue to be immediately appealable. In considering whether to grant a motion for findings under RAP 2.2(d), the trial court noted that "[i]t does strike the Court that judicial economy would be best served if Plaintiffs' arguments (and this Court's rulings) on the per se violation issue . . . were reviewed by the appellate court before an expensive and time consuming trial is conducted." Clerk's Papers (CP) at 1192. The trial court reserved ruling on the motion until entry of proper orders.

Although a denial of partial summary judgment requires a motion for discretionary review or findings under RAP 2.2(d), this case presents an unusual situation in which the denial of partial summary judgment is essentially a final judgment for the purposes of appeal. As a result, we reach the merits of the case.

We agree that secrecy is only compromised when individual voters can be linked to their votes. We conclude that the use of UBIs does not violate the right to ballot secrecy.

The right of absolute secrecy of the vote is considered a fundamental right of Washington voters. RCW 29A.04.206(2). The Washington Constitution protects this right. WASH. CONST. art. VI, § 6.

The determination of whether the use of UBIs violates the right to ballot secrecy requires interpretation of both the Washington Constitution and state statutes. "When interpreting constitutional provisions, we look first to the plain language of the text and will accord it its reasonable interpretation." Wash. Water Jet Workers Ass'n v. Yarbrough, 151 Wn.2d 470, 477, 90 P.3d 42 (2004). In statutory interpretation, the purpose is to determine and give effect to the intent of the legislature. State v. Evans, 177 Wn.2d 186, 192, 298 P.3d 724 (2013). "When possible, we derive legislative intent solely from the plain language enacted by the legislature, considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, and the statutory scheme as a whole." Evans, 177 Wn.2d at 192. If a statute is subject to more than one reasonable interpretation, then the statute is ambiguous. Evans, 177 Wn.2d at 192-93. Where a statute is ambiguous, we engage in statutory construction, which includes consideration of legislative history to discern legislative intent. Evans, 177 Wn.2d at 192-93. "[A] statute is not ambiguous merely because more than one interpretation is conceivable." City of Seattle v. Winebrenner, 167 Wn.2d 451, 456, 219 P.3d 686 (2009).

7

Questions of law are reviewed de novo. State v. MacDonald, 183 Wn.2d 1, 8, 346 P.3d 748 (2015). This includes constitutional issues and questions of statutory interpretation. MacDonald, 183 Wn.2d at 8 (constitutional issues are reviewed de novo); Winebrenner, 167 Wn.2d at 456 (questions of statutory interpretation are reviewed de novo). Decisions on summary judgment are also reviewed de novo. Owen v. Burlington N. & Santa Fe R.R. Co., 153 Wn.2d 780, 787, 108 P.3d 1220 (2005). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Owen, 153 Wn.2d at 787; CR 56(c).

*The Washington Constitution*

Under the Washington Constitution, "[t]he legislature shall provide for such method of voting as will secure to every elector absolute secrecy in preparing and depositing his ballot." WASH. CONST. art. VI, § 6. Article VI, section 6 requires that a person's individual vote remain secret. White v. Clark County, 188 Wn. App. 622, 632, 354 P.3d 38 (2015), review denied, 185 Wn.2d 1009, 366 P.3d 1245 (2016). But "nothing in article VI, section 6 expressly provides that the ballot itself must remain 'secret' as long as the voter who cast that ballot cannot be identified." White, 188 Wn. App. at 632. The central concern of ballot secrecy, therefore, is whether the individual voter can be identified. White, 188 Wn. App. at 632.

The content of the ballot, rather than any particular form of the ballot, is subject to the protection of article VI, section 6. State v. Carroll, 78 Wash. 83, 85, 138 P. 306 (1914). "Any ballot, therefore, however cast, that will guard and protect this secrecy and guard against intimidation and secure freedom in the exercise of

the elective franchise, is a secret vote by ballot." Carroll, 78 Wash. at 85. Thus, the form of the ballot is unimportant as long as the voter's identity remains secret.

Here, the secretary of state and the County provided evidence that a UBI is not linked to a voter and cannot be used to identify individual voters or their ballots. The elections supervisor for the County submitted a declaration stating, "Before, during, and after an election there is no cross reference, linkage or table . . . that would allow a person to correspond or link the bar code with the name, registration number or other identification of a voter. Votes cast are not associated in any way with a voter."[7]

Additionally, a voting systems specialist declared that the computers used for ballot tracking and vote tabulation are not linked and do not share data. The separate computer systems are not capable of sharing information. In fact, the County is unable to identify a voter in order to correct a ballot error because the UBI does not permit identification of the person who voted a ballot.

Based on this uncontroverted evidence in the record, UBIs cannot be used to link a particular ballot with an individual voter.[8] Because the identities of voters remain secret, UBIs safeguard voters' fundamental right to ballot secrecy as

---

[7] CP at 237.

[8] White claims that he has proven linkage between a UBI and a voter because he was able to determine which numbered ballot was assigned to a particular voter in his precinct. White declared that he compared his numbered ballot to his neighbors in the same precinct and determined that the ballots had been mailed in numerical order to an alphabetical list. Based on this, he determined which numbered ballot was sent to which individual voters. But this declaration does not provide adequate evidence of linkage. "In opposing summary judgment, a party may not rely merely upon allegations or self-serving statements, but must set forth specific facts showing that genuine issues of material fact exist." Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Grp., Inc., 114 Wn. App. 151, 157, 52 P.3d 30 (2002).

required by article VI, section 6 of the Washington Constitution. Without evidence that UBIs allow for the identification of individual voters and their ballots, there is no violation of the right to ballot secrecy. We conclude that the trial court did not err when it found that the use UBIs was not a per se violation of article VI, section 6.

*RCW 29A.08.161*

Under Washington law, "[n]o record may be created or maintained by a state or local governmental agency or a political organization that identifies a voter with the information marked on the voter's ballot." RCW 29A.08.161. The plain language of this statute prohibits a record that links an individual voter to his or her ballot. Thus, a violation of that statute only occurs when a voter can be connected to the information marked on a ballot. This prohibition against linkage between a voter and his or her ballot addresses the same concerns for secrecy found in article VI, section 6 of the Washington Constitution. The identity of the voter must remain secret.

White has not shown that the UBI resulted in any linkage between voter's identifying information and his or her marked ballot that would violate RCW 29A.08.161. In contrast, the previously discussed evidence presented by the secretary of state and the County amply demonstrates that UBIs do not lead to the identification of individual voters and their ballots.[9] Because UBIs do not result in a record that identifies voters with the information marked on the voters' ballots,

---

[9] As a self-serving statement without supporting evidence, White's declaration does not set forth genuine issues of material fact as needed to prevent summary judgment.

we conclude that the trial court did not err in its determination that the County's use of UBIs was not a per se violation of RCW 29A.08.161.

RCW 29A.36.111

In Washington, "[e]very ballot for a single combination of issues, offices, and candidates shall be uniform within a precinct." RCW 29A.36.111(1). RCW 29A.36.111 requires uniformity but does not define "uniform." The dictionary defines "uniform" as "marked by lack of variation, diversity, change in form, manner, worth, or degree" and "showing a single form, degree, or character in all occurrences or manifestations." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2498 (1993). Thus, ballots may not vary within a precinct.

The plain language of the statute provides that "a single combination of issues, offices, and candidates" cannot vary within a precinct. RCW 29A.36.111(1). Based on this list, all ballots within a precinct must contain the same content for voting. This suggests that the content of the ballot, rather than the form, is the central concern of the uniformity requirement.

The statute further specifies that "[n]o paper ballot or ballot card may be marked by or at the direction of an election official in any way that would permit the identification of the person who voted that ballot." RCW 29A.36.111(2). This prohibits the marking of ballots in ways that allow for the identification of the voter. The statute makes no mention of and therefore does not apply to marks that do not permit identification of the voter. Thus, the plain language of the statute requires linkage between a mark and identification of the individual voter's ballot.

11

Reading RCW 29A.36.111(1) in its entirety, the uniformity requirement ensures that voters within a precinct vote on the same content and that their individual ballots cannot be identified. Differences unrelated to voting content do not violate the requirement of uniformity where a voter's identity remains secret.

The UBIs are ballot card markings, but do not violate RCW 29A.36.111. UBIs result only in non-content related variations that do not permit identification of the person who voted the ballot. Therefore, the trial court did not err in its determination that the use of UBIs is not a per se violation of RCW 29A.36.111(1).

## Equal Protection Claim

In ruling that the secretary of state had failed to properly certify the MiBT, the trial court found that "similarly situated persons in Washington are treated differently with respect to their fundamental right to vote because some vote by a fully certified system and some vote by a system that is only partly certified."[10] White requests extension of this equal protection ruling to voters denied the right of a secret ballot due to the use of UBIs. But UBIs do not violate the constitutional and statutory right to absolute secrecy in voting. Therefore, the use of UBIs in various counties did not result in disparate treatment. We conclude that White's equal protection claim fails as to ballot secrecy.

## Fees on Appeal

The trial court found that White was the prevailing party under 42 U.S.C. § 1983 on the equal protection claim pertaining to MiBT certification. As a result, White was potentially entitled to recover reasonable attorney fees below. White

---

[10] CP at 1172.

requests an award of fees on appeal based on the extension of the equal protection holding to the use of UBIs.

A court has discretion to award reasonable attorney fees to the prevailing party in an enforcement action under 42 U.S.C. § 1983. See 42 U.S.C. § 1988(b) (attorney fees). Because the use of UBIs did not violate ballot secrecy, White's equal protection claim fails and he is not the prevailing party. We decline the request for attorney fees on appeal.

Affirmed.

Trickey, J

WE CONCUR:

Spearman, J.                         Dwyer, J.