[No. 56450-1-I. Division One. January 2, 2007.]

NORTH COAST ELECTRIC COMPANY, *Appellant*, v. MARTIN SELIG ET AL., *Respondents*.

638

640

*Wm. R. Turnbow* (of *Hershner Hunter, LLP*) and *John M. Greeley*, for appellant.

*William K. McInerney, Jr.* (of *W.K. McInerney, PLLC*), for respondents.

¶1 BAKER, J. — North Coast Electric Company sued Martin Selig for the unpaid purchase price of fixtures and materials. Selig counterclaimed, alleging a violation of RCW 60.04.081, disparagement of title, and intentional interference with contractual relations. On North Coast's motion for summary judgment, the court ruled in favor of North Coast's claims and awarded attorney fees. Subsequently, on Selig's motion for reconsideration, the court struck certain portions of the award. North Coast appeals from the court's order on motion for reconsideration. After Selig's counterclaims were voluntarily dismissed, the court awarded North Coast attorney fees in conjunction with

Selig's counterclaims. Selig appeals from that order, arguing that the award was not warranted under the parties' contract, Civil Rule (CR) 11, or RCW 4.84.185. We affirm in part and remand in part.

I

¶2 North Coast sued Selig for the unpaid purchase price of light fixtures and related materials, requesting the principal amount of $102,319.22 plus sales tax and interest. The complaint included a claim for foreclosure of a lien filed against certain real property and breach of contract claims.

¶3 Selig counterclaimed, alleging a violation of RCW 60.04.081, disparagement of title, and intentional interference with contractual relations. Selig argued that North Coast's lien was wrongful because under RCW 60.04.031, a lien can only be recorded against a site which is the subject of a contract. The lien was recorded against Selig's property at 1000 Second Avenue, but the light fixtures were installed in Selig's Fourth and Blanchard Building. Selig also claimed that no prelien notice was filed as required by RCW 60.04.031.

¶4 North Coast moved for summary judgment on its claims and for a supplemental award of $35,238.50 for attorney fees and costs. It claimed it was entitled to attorney fees pursuant to a clause in the parties' credit agreement. By executing the "Confidential Credit Application," Selig agreed to the following:

> In the event it becomes necessary to refer any amount to an attorney for collection, we agree and promise to pay your reasonable attorney's fee and collection costs, even though no suit is filed. If a legal proceeding is commenced, we agree to pay NORTH COAST ELECTRIC CO's reasonable attorney's fees in such proceeding or any appeal thereof.

¶5 In response, Selig conceded the amount due for the light fixtures and materials but contested the request for attorney fees. Selig argued that North Coast could not recover attorney fees under the credit application because it

was not a contract. Selig did not object to the amount or category of fees.

¶6 The court granted North Coast's motions. It found in favor of North Coast on its contract claims and noted that satisfaction of the judgment would moot the foreclosure claim. It granted North Coast's request for attorney fees in full.

¶7 Selig moved for reconsideration on the attorney fee award, objecting to the categorization of some costs and to an award of fees for secretarial work. The court granted Selig's motion for reconsideration. It disallowed secretarial costs in the sum of $4,352.50, undocumented future attorney fees in the sum of $3,500.00, and undocumented future costs in the sum of $400.00. But the court added $1,000.00 to North Coast's award for having to respond to the motion for reconsideration because no specific objection to the requested fees and costs was raised during the prior hearing.

¶8 Selig voluntarily dismissed his counterclaims under CR 41. Because there were no remaining claims or counterclaims in the action, the court certified as final under CR 54 its order granting North Coast summary judgment and attorney fees, the order on motion for reconsideration, and the order dismissing Selig's counterclaims. North Coast appealed, seeking review of the court's order on motion for reconsideration. Selig did not cross-appeal from the order of final judgment.

¶9 Several months later, the court granted North Coast's motion for attorney fees in connection with Selig's counterclaims, awarding $50,741.50 for attorney fees and $3,119.79 for costs. The court based the award on the credit agreement, CR 11, and RCW 4.84.185. Selig appealed.

II

A. North Coast's Appeal

¶10 "When reviewing an award of attorney fees, the relevant inquiry is first, whether the prevailing party was entitled to attorney fees, and second, whether the

award of fees is reasonable."[1] Whether a party is entitled to attorney fees is an issue of law, which is reviewed de novo.[2] Whether the amount of fees awarded was reasonable is reviewed for an abuse of discretion.[3] A trial judge is given broad discretion in determining the reasonableness of an award, and in order to reverse that award, it must be shown that the trial court manifestly abused its discretion.[4]

¶11 North Coast argues that it is entitled to secretarial fees and future fees and costs under the credit contract. It argues that "reasonable attorney fees" includes such expenses. Selig responds that the secretarial fees sought by North Coast are not fees for legal services as this court described those services in *Absher Construction Co. v. Kent School District No. 415*.[5] Selig also argues that a court cannot determine in advance whether future fees and costs are reasonable and, therefore, they cannot be awarded.

¶12 Our Supreme Court has held that "reasonable attorney fees" includes reasonably necessary expenses of litigation.[6] It has not expressly decided whether secretarial work can be included in calculating an attorney fee award. This court's decision in *Absher* provides the best guidance on whether secretarial time may be included in an attorney fee award. In *Absher*, we found the Arizona court's reasoning in *Continental Townhouses East Unit One Ass'n v. Brockbank*[7] persuasive. Because nonlawyer personnel decrease the expense of litigation, use of their services should

---

[1] *Ethridge v. Hwang*, 105 Wn. App. 447, 459, 20 P.3d 958 (2001).

[2] *Ethridge*, 105 Wn. App. at 460.

[3] *Ethridge*, 105 Wn. App. at 460.

[4] *Ethridge*, 105 Wn. App. at 460.

[5] 79 Wn. App. 841, 905 P.2d 1229, 917 P.2d 1086 (1995).

[6] *Panorama Vill. Condo. Owners Ass'n Bd. of Dirs. v. Allstate Ins. Co.*, 144 Wn.2d 130, 142, 26 P.3d 910 (2001); *La.-Pac. Corp. v. Asarco, Inc.*, 131 Wn.2d 587, 605, 934 P.2d 685 (1997) (Sanders, J., concurring).

[7] 152 Ariz. 537, 733 P.2d 1120 (Ct. App. 1986) (holding that the recoverability of fees for legal work performed by legal assistants and law clerks may be included in attorney fees).

not be discouraged.[8] Excluding such services from an attorney fee award might act as a deterrent to providing cost-effective legal services. We held that the services of a "qualified legal assistant" may be included in an attorney fee award. To fit into this category,

> (1) the services performed by the nonlawyer personnel must be legal in nature; (2) the performance of these services must be supervised by an attorney; (3) the qualifications of the person performing the services must be specified in the request for fees in sufficient detail to demonstrate that the person is qualified by virtue of education, training, or work experience to perform substantive legal work; (4) the nature of the services performed must be specified in the request for fees in order to allow the reviewing court to determine that the services performed were legal rather than clerical; (5) as with attorney time, the amount of time expended must be set forth and must be reasonable; and (6) the amount charged must reflect reasonable community standards for charges by that category of personnel.[9]

¶13 "[C]ompensation for preparing pleadings for duplication, preparing and delivering copies, requesting copies, and obtaining and delivering a docket sheet" is not within the realm of "reasonable attorney fees."[10]

¶14 In its brief, North Coast separates the costs of "legal assistants" from the costs of "secretaries." This alone suggests that the secretarial work was not substantive legal work. The description of the fees sought shows that the secretaries performed such tasks as obtaining information from the assessor, preparation of the lien claim, preparation of correspondence to the court, and the preparation

---

[8] *Brockbank,* 733 P.2d at 1127; *Absher,* 79 Wn. App. at 844. Similarly, in *Missouri v. Jenkins,* the Supreme Court noted that "[b]y encouraging the use of lower cost paralegals rather than attorneys wherever possible, permitting market-rate billing of paralegal hours 'encourages cost-effective delivery of legal services.'" 491 U.S. 274, 288, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989) (quoting *Cameo Convalescent Ctr. v. Senn,* 738 F.2d 836, 846 (7th Cir. 1984)).

[9] *Absher,* 79 Wn. App. at 845.

[10] *Absher,* 79 Wn. App. at 845.

of faxes.[11] Although the preparation of the lien claim may be legal in nature, the majority of the work appears clerical. Additionally, North Coast did not specify the qualifications of the secretaries performing the services in sufficient detail to demonstrate that they are qualified by virtue of education, training, or work experience to perform substantive legal work, as required under *Absher*. We conclude that the court did not err in striking the award for secretarial work.

¶15 Our courts have not considered whether future fees and costs may be included in an attorney fees award. North Coast urges us to adopt the position taken by the Oregon Court of Appeals in *Deutsche Credit Corp. v. Keeler*,[12] in which the court permitted a sum of $5,000 in the attorney fee award for legal services related to the future collection of the judgment.[13] The court stated only that the plaintiff presented evidence that it would incur these costs and that the trial court did not abuse its discretion in allowing it.[14] The opinion offers little guidance.

¶16 Typically, under the "lodestar" approach, Washington courts calculate the number of hours reasonably worked and multiply that by a reasonable rate.[15] After the lodestar has been calculated, the court may adjust the figure up or down to reflect factors not considered up to that point.[16] Courts may adjust the lodestar figure based on the contingent nature of success and the quality of work performed.[17]

---

[11] Although the secretaries are not identified, North Coast's brief indicates that they are paid $50 per hour. Secretarial time can be identified on the detailed list of work performed by the rate of pay.

[12] 96 Or. App. 257, 772 P.2d 1358 (1989).

[13] *Keeler*, 772 P.2d at 1360.

[14] *Keeler*, 772 P.2d at 1360.

[15] *Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581, 593-94, 675 P.2d 193 (1983).

[16] *Bowles v. Dep't of Ret. Sys.*, 121 Wn.2d 52, 72, 847 P.2d 440 (1993); *Bowers*, 100 Wn.2d at 593-94.

[17] *Bowers*, 100 Wn.2d at 593-94.

■ ¶17 An attorney fee award should generally not include fees to be incurred in the future. The amount of such fees is too uncertain, and later incurred fees would be better addressed in a supplemental request and order. We note that the trial court indicated that the requested future fees and costs were "undocumented." In fact, North Coast's brief indicates that its future fees and costs were "estimated," and they are unaccounted for in the detailed description of its expenses.

¶18 We conclude that the court did not err in denying North Coast's request for future legal fees and costs. In doing so, we do not address the propriety of awarding nominal future fees such as those which might be awarded for memorialization of a court's decision at the close of trial.

## B. Selig's Cross-Appeal

¶19 Selig argues that the court erred by granting an award of attorney fees and costs in connection with his counterclaims because: (1) the credit application is not an enforceable contract and, even if it is, it cannot be used to award attorney fees in conjunction with Selig's tort claims; (2) the court did not conduct a hearing or make any findings regarding what specific pleadings justified CR 11 sanctions; and (3) the award could not be based on RCW 4.84.185 because North Coast's motion for sanctions was not brought within 30 days of the termination of his counterclaims and, regardless, his counterclaims were well founded.

■ ¶20 North Coast argues that this issue is not preserved for appeal because Selig did not cross-appeal the court's earlier summary judgment order. As part of its May 2004 summary judgment order, the court decided that the credit agreement constituted a contract between the parties. Because it was already decided, this issue was not litigated as part of North Coast's request for attorney fees in connection with Selig's counterclaims.

¶21 RAP 2.4(a) provides, in pertinent part:

The appellate court will grant a respondent affirmative relief by modifying the decision which is the subject matter of the

review only (1) if the respondent also seeks review of the decision by the timely filing of a notice of appeal . . . or (2) if demanded by the necessities of the case.

¶22 Selig did not cross-appeal the court's May 2005 order certifying its judgment as final within the time limits imposed by RAP 5.1(d) and RAP 5.2(f). Instead, he filed a cross-appeal several months later, when the court granted North Coast attorney fees pursuant to the counterclaims. Even then, Selig did not designate the court's earlier order in his cross-appeal.[18] A party must seek review of a court's order before this court will entertain an appeal arising from that order.[19]

¶23 Selig briefly refers to this issue in responding to North Coast's appeal, simply indicating that it may be an issue. He only briefs this issue in substance as an affirmative claim in support of his cross-appeal. We conclude that Selig is not entitled to affirmative relief under the summary judgment order because he did not seek review of it.

¶24 We next address whether the credit application entitles North Coast to attorney fees for defending against Selig's counterclaim. For guidance on this question, we turn to *C-C Bottlers, Ltd. v. J.M. Leasing, Inc.*[20]

¶25 C-C Bottlers, Ltd. (CCB) sued J.M. Leasing, Inc. (JML), to collect two delinquent promissory notes. Both notes included a garden-variety attorney fee clause, which provided for recovery of the costs and expenses of collection. JML counterclaimed, alleging securities fraud.[21] The trial court awarded CCB attorney fees after finding that JML's counterclaims were "substantially interwoven and insepa-

---

[18] Selig originally filed an appeal after the court issued its order on North Coast's motion for summary judgment. That appeal was dismissed after the commissioner determined that, due to the ongoing counterclaims, it was not a final order.

[19] *Ortblad v. State*, 88 Wn.2d 380, 385, 561 P.2d 201 (1977); *Wagner v. Beech Aircraft Corp.*, 37 Wn. App. 203, 212-13, 680 P.2d 425 (1984).

[20] 78 Wn. App. 384, 896 P.2d 1309 (1995).

[21] *C-C Bottlers*, 78 Wn. App. at 386.

rable" from CCB's actions to obtain judgment on the notes.[22] CCB argued, and the trial court agreed, that the attorney fee clause covered counterclaims which, while not directly related to recovery of the notes, necessarily had to be defended in order to recover on the notes. The trial court held that although JML designated its securities fraud claims as counterclaims, they were actually tried as affirmative defenses.[23]

¶26 Division Three of this court disagreed, pointing out that JML's securities fraud claims were permissive counterclaims. The court noted that the claims did not avoid the obligation represented by the notes and were therefore not defenses, but independent and unrelated claims asserted permissively.[24] An affirmative defense cannot be adjudicated separately from the claims to which it applies, but a counterclaim can.[25]

¶27 The prevailing party should be awarded attorney fees only for the legal work completed on the portion of the claim permitting such an award because while collateral claims may well be related to the contract claim and therefore conveniently tried together, they need not be resolved in order to decide the primary claim. Allowing recovery of fees for actions which do not authorize attorney fees would also give the prevailing party an unfair and unbargained for benefit.[26]

¶28 Similarly, Selig's counterclaims were related to the contract claim, but they were amenable to separate adjudication. The legal theories raised and defended in the counterclaim action were different than those presented in the action on the contract claim. Just as JML conceded its obligations on the notes, so Selig conceded the amount due for the light fixtures and materials. His counterclaim was

---

[22] *C-C Bottlers*, 78 Wn. App. at 387.

[23] *C-C Bottlers*, 78 Wn. App. at 387.

[24] *C-C Bottlers*, 78 Wn. App. at 388.

[25] *C-C Bottlers*, 78 Wn. App. at 388.

[26] *C-C Bottlers*, 78 Wn. App. at 389.

not a defense against North Coast's contract claim, but a response to North Coast's lien against the 1000 Second Avenue property in which he alleged a violation of RCW 60.04.081, disparagement of title, and intentional interference with contractual relations. Selig's counterclaims were independent and unrelated claims asserted permissively, not a defense against North Coast's contract claim. We hold that the award of attorney fees relating to Selig's counterclaims pursuant to the credit application is not sustainable in light of the decision in *C-C Bottlers*.

¶29 If a complaint lacks a factual or legal basis, the trial court can impose CR 11 sanctions if it finds that the attorney who signed and filed the complaint failed to conduct a reasonable inquiry into the factual and legal basis of the claim.[27] But the court must make explicit findings as to which pleadings violated CR 11 and as to how such pleadings constituted a violation of CR 11.[28] The court must specify the sanctionable conduct in its order.[29]

¶30 Although the court summarily found that Selig's counterclaims were not, after reasonable inquiry, well grounded in fact and warranted under existing law, it did not state with specificity Selig's sanctionable conduct. For example, it did not make findings regarding the steps taken by Selig's attorney in inquiring into the claims or specifically address each claim and explain why it was not well grounded in fact or law.

¶31 Additionally, a party should move for CR 11 sanctions as soon as it becomes aware they are warranted. "Prompt notice of the possibility of sanctions fulfills the primary purpose of the rule, which is to deter litigation abuses."[30] Here, North Coast did not move for sanctions under CR 11 until Selig dismissed his counterclaims, which

---

[27] *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 220, 829 P.2d 1099 (1992).

[28] *Biggs v. Vail*, 124 Wn.2d 193, 201-02, 876 P.2d 448 (1994).

[29] *Biggs*, 124 Wn.2d at 202.

[30] *Biggs*, 124 Wn.2d at 198.

was over a year after his original pleadings. We hold that the award is not supported as a CR 11 sanction.

¶32 Finally, we address whether the fee award is sustainable under RCW 4.84.185. Selig first argues that sanctions under this statute were improper because North Coast moved for attorney fees more than 30 days after the court ruled on Selig's motion for dismissal. But North Coast moved for fees 30 days from the date that the order was entered.

¶33 However, before awarding attorney fees under RCW 4.84.185, the court must make written findings that the lawsuit in its entirety is frivolous and advanced without reasonable cause.[31] Again, the court summarily found that Selig's counterclaims were frivolous and advanced without reasonable cause. It did not specify why the counterclaims were baseless. Without some explanation, we are unable to determine whether the trial court abused its discretion in granting attorney fees under this statute. Therefore, we remand with directions to reconsider the RCW 4.84.185 basis for the award and to enter appropriate findings if the award is confirmed on that basis.

¶34 Affirmed in part and remanded in part.

Cox and Dwyer, JJ., concur.

---

[31] State ex rel. Quick-Ruben v. Verharen, 136 Wn.2d 888, 901, 969 P.2d 64 (1998).