IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of:<br><br>KATHERINE DAWN THOMAS,<br><br>     Respondent,<br><br>and<br><br>GEOFFREY BRYAN THOMAS,<br><br>     Appellant. | No. 86760-1<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — Geoffrey Thomas, representing himself on appeal, challenges the order of the superior court enforcing certain terms of a previously entered and unchallenged final divorce decree. Thomas asserts that the superior court's determination of the value and division of certain disputed household fixtures and large appliances modified the property division set forth in the decree. We disagree. Thomas also asserts that the court had no basis to award Katherine Brown[1] attorney fees and that the amount awarded was not reasonable. Although the superior court did not err in determining that Thomas was intransigent and awarding attorney fees, the superior court, based on the record before us, did not address Thomas's objections to the reasonableness of

---

[1] For clarity, we refer to the Respondent as Brown, her last name at the time of this decision's publication.

the attorney fee award and failed to enter <u>any</u> findings supporting the fee award other than a general conclusory finding that the fees are reasonable. Accordingly, we affirm in part, reverse in part and remand for the trial court to adequately address Thomas' objections to the reasonableness of Brown's requested attorney fees and costs.[2]

## FACTS

The matter before us involves the enforcement of a dissolution decree entered following a bench trial in 2023. That decree was not appealed.

Following a bench trial, the court awarded Brown sole ownership of her pre-marital property in Woodinville as her separate property, which included a residence thereon, less a real property award of $85,904 identified as "sweat equity" comprised of Thomas's "separate pre-marital contribution to the Woodinville home." The decree also awarded to Brown personal property described as "all possessions currently in her possession" and awarded to Thomas personal property described as "all possessions currently in his possession."[3] And in its final paragraph, the decree ordered Thomas to vacate the Woodinville property within 60 days.[4]

_____

[2] Thomas raises other challenges on appeal. None merit appellate relief as discussed below.

[3] The decree also awarded each personal property as listed in "Exhibit A&L" as their separate property. This exhibit does not specifically list any of the disputed items in this matter as "separate property."

[4] Later, when Brown moved to enforce the decree, Brown's counsel in discussing past events, referenced that "[Thomas] unilaterally moved into the separate property home of [Brown] during the divorce," and that the superior court had previously ordered Thomas to move out the Woodinville home and granted Brown an award of attorney fees for that proceeding. Although we do not have the transcript from the dissolution trial or a subsequent proceeding that generated an award of attorney fees different than the one

Thomas later vacated the Woodinville residence. In so doing, however, he removed—and did not replace—several of the residence's fixtures and several of its major appliances, including the kitchen's refrigerator and the washer and dryer.

Brown later filed a motion for hearing for contempt or, in the alternative, enforcement of the property division set forth in the decree, requesting the replacement value of those appliances and fixtures removed by Thomas. These items and their values, as described in her motion and as supported by accompanying exhibits, included the following:

- The refrigerator – Exhibit C, Receipt; Exhibit D, Photo of it missing.
- The washer and dryer – Exhibit E, Receipt; Exhibit F, Photo of them missing.
  A utility sink and cabinet was also removed.
- Miniature fridge/fridge drawers (there is nothing else that could reasonably occupy this odd space) – Exhibit G, Receipt; Exhibit H, Photo of it missing.
- Downstairs light fixture – Exhibit I, Photo of missing light fixture.
- Two built-in bookshelves (there is not even installed carpet where they used to be) – Exhibit J, Receipt; Exhibit K, Photo of them missing.
- The mirrors in the master bathroom – Exhibit L, Receipt; Exhibit M, Photo of them missing.
- An entire sink/vanity from the downstairs bathroom (this same sink was already litigated at trial and Respondent was already given some sweat equity for its installation) – Exhibit N, Photo of it missing.

(Boldface omitted.) Brown also requested an award of attorney fees on the basis that Thomas's intransigence necessitated the filing of her motion for

---

before us in the instant case, we note that Thomas did not dispute these assertions at the February 2024 decree enforcement hearing.

enforcement. Brown's attorney later filed a declaration requesting an attorney fee award of $7,075.50 with corresponding logs of services rendered.

Following a hearing in February 2024, a superior court commissioner considered Brown's request only as a motion for enforcement of the decree. The commissioner determined that the disputed appliances and fixtures had been awarded to Brown as part of the final divorce decree, that replacement value was a reasonable measure of her damages, that her proposed valuations were reasonable, and that Thomas had not proposed alternate valuations. The commissioner therefore ordered Thomas to pay Brown a sum of $13,949.89, which the commissioner determined was the replacement value for the missing appliances and fixtures. The commissioner also determined that Thomas's conduct regarding removing fixtures and a certain appliance constituted intransigence and granted Brown's request for an attorney fee award of $7,075.[5] In approving of the amount of fees, but without making additional findings, the commissioner stated that "[t]he court concludes that the fees requested are reasonable under the circumstances."

Thomas thereafter filed a motion for revision of the commissioner's order, challenging the commissioner's determinations regarding the disputed items' division and valuation and challenging the attorney fee award. In May 2024, the superior court entered an order denying the motion for revision and adopting the

---

[5] The attorney fee award requested by Brown was $7,075.50. The commissioner awarded her $7,075.00, a sum 50 cents less than that which she requested. The commissioner's order reflects an intent to grant Brown's award as requested but does not explain this discrepancy. Therefore, for the purpose of our decision, we treat this as a scrivener's error and conclude that the court intended to award the sum that Brown requested.

- 4 -

commissioner's reasoning and ruling. In so doing, the court did not remand the matter back to the commissioner to enter further findings.

Thomas timely appeals.

## DISCUSSION

Preliminarily, we note that Thomas represents himself on appeal. We hold self-represented litigants to the same standards as licensed attorneys and expect them to follow the rules of appellate procedure. In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993). "The scope of a given appeal is determined by the notice of appeal, the assignments of error, and the substantive argumentation of the parties." Clark County v. W. Wash. Growth Mgmt. Hearings Rev. Bd., 177 Wn.2d 136, 144, 298 P.3d 704 (2013) (citing RAP 5.3(a); RAP 10.3(a), (g); RAP 12.1)).

Accordingly, the following principles of appellate review inform our analysis in part. First, RAP 10.3(g) requires

> [a] separate assignment of error for each finding of fact a party contends was improperly made must be included with reference to the finding by number. The appellate court will only review a claimed error which is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto.

See also In re Marriage of Drlik, 121 Wn. App. 269, 275, 87 P.3d 1192 (2004). Additionally, the party assigning error on appeal has the burden of perfecting the record so that the court has before it all the evidence relevant to the issue raised on appeal. RAP 9.2, 9.6; In re Marriage of Haugh, 58 Wn. App. 1, 6, 790 P.2d 1266 (1990). Moreover, that party must provide "argument in support of the

issues presented for review, together with citations to legal authority and references to relevant parts of the record." RAP 10.3(a)(6).

We need not consider arguments unsupported by references to the record, meaningful analysis, or citation to pertinent authority. Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011). And we are not obligated to search the appellate record to find evidence in support of a party's assertion. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 819, 828 P.2d 549 (1992).

Thomas assigns error to findings of fact set forth in the superior court's order on enforcement. However, he does not separately assign error to any of these findings nor does he reference the challenged findings by number, as required by RAP 10.3(g). Furthermore, he alleges many facts not in the record before us and he provides few, if any, citations to legal authority as required by RAP 10.3(a)(6). Despite these deficiencies, where Thomas sufficiently challenges a finding of fact in the argument set forth in his briefing, where the trial court's finding is inherent to the basis for its enforcement order, and to the extent allowed by the record designated on appeal, we exercise our discretion to address his assignments of error as discussed below. See RAP 1.2(a), (c); Fox v. Sackman, 22 Wn. App. 707, 709, 591 P.2d 855 (1979).

<u>Challenge to Order on Enforcement</u>

Thomas asserts that the superior court, by denying his motion for revision, erred in adopting the commissioner's determinations regarding the property division and valuation set forth in the order on enforcement. We disagree.

We have stated that

> [o]n a revision motion, a trial court reviews a commissioner's ruling de novo based on the evidence and issues presented to the commissioner. RCW 26.12.215; RCW 2.24.050; In re Marriage of Moody, 137 Wn.2d 979, 992-93, 976 P.2d 1240 (1999). When an appeal is taken from an order denying revision of a court commissioner's decision, we review the superior court's decision, not the commissioner's. In re Estate of Wright, 147 Wn. App. 674, 680, 196 P.3d 1075 (2008).

In re Marriage of Williams, 156 Wn. App. 22, 27, 232 P.3d 573 (2010). "We review challenged findings of fact for substantial evidence and the conclusions of law de novo." In re Guardianship of Knutson, 160 Wn. App. 854, 863, 250 P.3d 1072 (2011) (citing In re Marriage of Dodd, 120 Wn. App. 638, 643, 86 P.3d 801 (2004)). Here, the superior court, in denying Thomas's motion for revision, indicated that it "agrees with and adopts the Commissioner's reasoning and rulings," thus implicitly adopting the commissioner's findings of fact and conclusions of law. For this reason, we herein refer to the findings and conclusions set forth in the commissioner's decision, notwithstanding that we review the decision of the superior court.

*A. Disputed Items' Ownership*

Thomas first contends that the superior court erred by ordering him to pay Brown for the value of the disputed items because, according to him, those items did not form part of the Woodinville home awarded to her in the final divorce decree. Although not expressly characterized by him as such, Thomas is asserting that the enforcement order impermissibly modified the property division in the dissolution decree. Thomas is incorrect.

Our Supreme Court has long-recognized that the superior court has broad equitable authority to enforce a property disposition set forth in a dissolution decree:

> It is inconceivable that a court in a divorce proceeding can divide the property between the parties and yet have no power to make that division effective if the parties are recalcitrant.
> . . .
> "To the extent that the court has the power to adjust the property rights of the parties, it can require that its mandates be carried out, either by act of the party or by directing the making of a conveyance by a representative of the court if the party fails or refuses to make it. This is a generally recognized power of a court invested with authority to deal with property rights and interests. It is commonly exercised to effectuate transfer of interests if the parties are recalcitrant; thence there is nothing peculiar to divorce litigation in its application, where necessary, to carry out what the court is empowered to do by way of adjustment of rights and interests."

Robinson v. Robinson, 37 Wn.2d 511, 516, 225 P.2d 411 (1950) (quoting 2 WILLIAM T. NELSON, NELSON ON DIVORCE AND ANNULMENT § 16.01, at 285 (2d ed. 1945)). Related to this broad authority, the superior court can enforce a decree of dissolution so long as it does not modify the decree.[6] See, e.g., In re Marriage of Thompson, 97 Wn. App. 873, 878-79, 988 P.2d 499 (1999). A decree is modified when the rights given to one party are either extended beyond or reduced from the scope originally intended by the decree. Rivard v. Rivard, 75 Wn.2d 415, 418, 451 P.2d 677 (1969); Thompson, 97 Wn. App. at 878.

The interpretation of a dissolution decree presents a legal question that we review de novo. Thompson, 97 Wn. App. at 877. When a decree is unambiguous, there is nothing for us to interpret. But if it is ambiguous, we apply

---

[6] RCW 26.09.170(1) prohibits modification of a dissolution decree in the absence of conditions that justify reopening of the judgment.

- 8 -

the general rules of construction applicable to statutes, contracts, and other writings to determine the intent of the court that entered the decree. Id. at 878.

The dissolution decree unambiguously reflects that, in awarding Brown the Woodinville property as her separate property, the court intended to award her the household fixtures and large appliances that were associated with the house and that were not otherwise listed as Thomas's separate personal property on Exhibit A&L.

The fixtures and large appliances now currently in dispute were situated inside of the Woodinville residence at the time of the decree's entry. On appeal, Thomas does not meaningfully dispute or contest that it is reasonable to infer that the items in question—a refrigerator, a washer and dryer, a utility sink and cabinet, a miniature refrigerator and drawers, a light fixture, built-in bookshelves, mirrors, and a vanity sink—are items that can be considered as part of a house. This is especially true when the court did not list these items on Exhibit A&L as Thomas's separate personal property while simultaneously awarding Brown the residence and ordering Thomas to vacate the residence.

Therefore, to the extent that, prior to the entry of the decree, any of the disputed items could have once been considered in Thomas's possession, the entry of the divorce decree extinguished his interest in those items and awarded the interest therein to Brown.

Bolstering this interpretation is the court's "sweat equity" award to Thomas. The "sweat equity" award suggests that the court found that Thomas had made certain investments in the home and correspondingly awarded him the

equitable value of his "sweat equity." It reasonably follows that the court intended to grant to Brown the <u>possession</u> of the real estate and intended to grant to Thomas the <u>value</u> of, not possession of, his contributions to the property. Therefore, to the extent that any of the disputed items could be understood as Thomas's possessions prior to their marriage, the entry of the divorce decree extinguished his interest in that property and awarded such interest to Brown. Therefore, the court's decree unambiguously awarded the disputed items to Brown.

Thomas nevertheless proposes an alternative interpretation of the decree: that, because he was residing in the house before the decree was entered and because the decree set forth that he "shall be entitled to all possessions currently in his possession," he was the rightful possessor of the disputed items that he removed from the house. This argument is unpersuasive.

First, whether he was residing in the home prior to the entry of the decree is immaterial to the court's intention underlying its property division. As discussed above, the court awarded ownership of the house to Brown at the time of the decree's entry and ordered him to vacate the premises. It is similarly immaterial to the court's intended property division whether he may have been "in possession" of the disputed items prior to the entry of the decree by the mere fact of his residing in the home or of his use of those items. Once the decree was entered, he no longer had a reasonable expectation of ownership over those things reasonably associated with the house.

To be sure, the court contemplated that Thomas may have had certain personal property in his possession at the time the decree was entered and, accordingly, awarded him such property that was in his possession. However, possessing his personal clothing, for example, is far different than possessing items that were more closely associated with the actual house than the person in the house. Indeed, the court issued to Brown an identical award entitling her to the items currently in her possession, and, following Thomas's logic, this would include all items reasonably included in her residence. Once again, whether Thomas was "in possession" of the disputed items prior to the entry of the decree is immaterial. Upon the decree's entry, the Woodinville home—and everything reasonably included within as much—was awarded to Brown.

Therefore, the order on enforcement determining that Brown was the owner of the disputed items did not extend or reduce the scope of the property award to the parties and, thus, did not modify the decree. Rather, the order merely enforced the property division unambiguously reflected in the decree. Accordingly, the superior court did not err by entering the order on enforcement in this matter.[7]

---

[7] Thomas nevertheless analogizes the superior court's equitable property division awarding Brown her Woodinville residence as her separate property to a private sale of real property from one party to another. Thomas is mistaken. He does not present any argument or analysis based in the language of the decree that the court intended to rely on administrative codes, standardized real estate purchase and sale agreements, or appraisals of the home. Rather, the court, in reaching a "just and equitable" property allocation, noted that "[t]he Parties provided the valuations in [Exhibit A&L] in the presentation of proposed orders. The Court deems those particular valuations reasonable but is not strictly relying on them for its allocation, as opposed to the evidence presented and the respective positions of the Parties at trial." (Emphasis added.) Thus, Thomas's claim fails.

*B. Disputed Items' Valuation*

Brown next contends that the superior court erred in its determination of the value of the disputed items. We disagree.

Paragraph 15 of the enforcement order reads as follows:

[Brown] provided evidence of the value of the items taken by Mr. Thomas. That total is $13,949.89. While Mr. Thomas argues that these items were used and [Brown] is asking for replac[e]ment value, he proffers no alternate values and [Brown] is going to have to replace these items. The court finds the values to be reasonable.

Substantial evidence supports this finding. Brown's motion and the exhibits attached thereto setting forth the value of the disputed items, along with her declaration, together support the court's determination. Furthermore, Thomas does not dispute the accuracy of her exhibits or declaration, does not present persuasive argument or legal authority in support of the proposition that the court erred by relying on the items' replacement value, and does not dispute the court's finding that he did not bring alternate values to the court's attention.

Nevertheless, Thomas asserts that substantial evidence does not support this finding because other measurements are, according to Thomas, "more accurate" or the "actual replacement cost." In so asserting, however, he does not provide citation to the appellate record. We do not consider assertions unsupported by citation to the record. Norcon Builders, 161 Wn. App. at 486. Furthermore, even if he had cited to evidence in the record, the existence of evidence in support of a contrary finding does not, by itself, establish that the challenged finding is not supported by substantial evidence. Thus, the court did

not err by entering the finding in question.[8] Accordingly, Thomas's challenge fails.[9]

## Motion on Revision

Thomas next asserts that the superior court erred in denying his motion on revision because the court's ruling was based on arguments that were not presented to the commissioner. For several reasons, Thomas is mistaken.

"'Generally, a superior court judge's review of a court commissioner's ruling, pursuant to a motion for revision, is limited to the evidence and issues presented to the commissioner.'" Goodell v. Goodell, 130 Wn. App. 381, 389, 122 P.3d 929 (2005) (quoting Moody, 137 Wn.2d at 992-93); see also In re Marriage of Balcom, 101 Wn. App. 56, 59, 1 P.3d 1174 (2000).

Here, the order in question stated, in pertinent part, as follows:

> The Court is denying revision. The Court agrees with and adopts the Commissioner's reasoning and rulings, see Dkt. 464. As one additional observation, the Court also notes that the purchase records Petitioner Brown has submitted show that Petitioner's sister

---

[8] Thomas also relies on our decision in Burrill v. Burrill, 113 Wn. App. 863, 874, 56 P.3d 993 (2002), to support his claim that the items that he took were not part of the Woodinville residence because, according to him, Burrill stands for the proposition that, when a home is awarded in a dissolution action, the only consideration is whether the home was in an inhabitable condition. However, in that case, we held that not only was it "fair to conclude that the award of the home implied that it be left in a habitable condition" but also that "the trial court fairly concluded that the award of the home . . . included the appliances." Burrill, 113 Wn. App. at 874. Thus, habitability is not the only consideration. Accordingly, his reliance on Burrill is unavailing.

[9] We note that the superior court—as well as the parties on appeal—appears to have relied on certain statements by the court made in explaining its order denying Brown's second motion for clarification. This order was not appealed and is not properly before us. Moreover, because the court denied that motion, we consider the statements therein not as facts found by the court, but rather, as reasoning in support of the clarification order in question. Furthermore, because we may affirm a decision of the superior court on any basis supported by the record, we need not and do not rely on those statements in our decision in this matter. Rather, we need only rely on the unambiguous language of the decree itself.

purchased the key appliances in dispute, for [Brown]. *See* Dkt. 428 at 23, 29; *see also* Dkt. 332 at 6. This only adds to the strength of [Brown]'s position and the overall unreasonableness of [Thomas]'s actions in this instance.

The superior court did not err. First, the evidence in question was not new: the superior court indicated that it relied on "purchase records" in making its determination, and it is undisputed that Brown presented those records—two receipts—to the commissioner as exhibits to her motion for enforcement. Furthermore, the issue in question—whether key appliances that were in dispute were awarded to Brown or to Thomas as part of the final divorce decree—was considered by and ruled on during the proceeding on Brown's motion for enforcement. Therefore, the evidence and issue that the superior court considered were the same as those presented to the commissioner. The court did not err by making observations from the evidence and record before the commissioner.[10] Accordingly, Thomas's claim fails.

<u>Allegations of Due Process Violations</u>

Thomas also asserts that he was deprived of his constitutional right to a fair trial for two reasons: (1) the commissioner in a temporary restraining order proceeding, who was the same commissioner who heard Brown's motion for enforcement, exhibited bias against him during the restraining order proceeding; and (2) the superior court judge who presided over the marital dissolution

---

[10] Additionally, even if the evidence or issue relied on by the court were not part of the record before the commissioner, the language of the court's order clearly reflects that its additional consideration was not essential to its ruling: the court's use "as one additional observation," "also," and "adds to" reflects the court was supplementing its ruling, rather than basing its ruling on those phrases. Therefore, any error (of which there were none) would be harmless.

proceedings did not give him "adequate time to fully present his case, cross-examine adverse witnesses, or provide a complete defense throughout the proceedings, including at trial."

Thomas asserts that the bias exhibited from the commissioner in a prior unrelated hearing continued to the hearing on the motion to enforce the decree, and that, had he been provided a fair dissolution trial, the outcome of his motion on revision would have changed.

The due process clause of the state and federal constitutions protects an individual's right to a fair trial, which includes the right to have one's case presided over by a judge free from actual or potential bias. In re Murchison, 349 U.S. 133, 136, 75 S. Ct. 623, 99 L. Ed. 942 (1955); U.S. Const. amend. XIV; Wash. Const. art. I, § 3.

However, Thomas does not cite to the record for instances of how the commissioner demonstrated bias in the hearing related to the order that is subject to this appeal. He, instead, bases his due process claims on what occurred in past hearings that resulted in orders that he did not appeal. What occurred during the hearing for the temporary restraining order and the dissolution trial are not properly before us. Even so, Thomas contends that the commissioner's bias continued from prior hearings through the hearing on Brown's motion for enforcement and that the bias from his dissolution trial "tainted the fairness of the entire proceedings and set a prejudicial tone that has persisted throughout this case."

To the extent that Thomas attempts to connect his allegations of judicial bias during the dissolution trial to the superior court's consideration of his motion for revision, he fails to provide any citation to the record in support of this conclusory allegation. We do not consider assertions unsupported by adequate facts. Cowiche Canyon, 118 Wn.2d at 819. Moreover, the evidence that Thomas relies on in support of his assertion that his due process rights were violated is the fact that the commissioner ruled against him.[11] However, it is well-established that a judicial ruling, by itself, does not establish judicial bias. In re Pers. Restraint of Davis, 152 Wn.2d 647, 692, 101 P.3d 1 (2004) ("Judicial rulings alone almost never constitute a valid showing of bias." (citing Liteky v. United States, 510 U.S. 540, 555, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994))).

Thomas's due process claim is actually an attempt to relitigate the hearing on temporary restraining order and the dissolution trial. However, he did not timely appeal following those hearings and related orders, which are now binding against him.[12] Accordingly, we do not consider his claims.

---

[11] Thomas also relies on the tone of the commissioner's voice during the audio recording of the hearing in question. However, he has not designated that recording for our consideration on appeal. Haugh, 58 Wn. App. at 6; RAP 9.6. Therefore, he has not carried his burden as to this claim.

[12] Thomas also generally asserts, without citation to the record, argument, or decisional authority, that family courts in this state are biased against fathers, that he was deprived of the Sixth Amendment right for criminal defendants to confront their accusers, and that certain legal principles governing the exclusion of improperly obtained evidence uncovered during a criminal investigation apply to the matter before us. We do not consider assertions unsupported by adequate facts, reasoning, or legal authority. Cowiche Canyon, 118 Wn.2d at 819. Thus, Thomas's assertions fail.

<u>Award of Attorney Fees in Order on Enforcement</u>

Thomas next asserts that the superior court erred by granting Brown's request for an award of attorney fees. We disagree in part and agree in part.

We have stated that

> "[a]n appellate court will uphold an attorney fee award unless it finds the trial court manifestly abused its discretion. Discretion is abused when the trial court exercises it on untenable grounds or for untenable reasons. <u>Chuong Van Pham v. City of Seattle</u>, 159 Wn.2d 527, 538, 151 P.3d 976 (2007). The burden of demonstrating that a fee is reasonable is upon the fee applicant. <u>Scott Fetzer Co. v. Weeks</u>, 122 Wn.2d 141, 151, 859 P.2d 1210 (1993)."

<u>View Ridge Ests. Homeowners Ass'n v. Guetter</u>, 30 Wn. App. 2d 612, 646-47, 546 P.3d 463, <u>review denied</u>, 554 P.3d 1225 (2024) (quoting <u>Berryman v. Metcalf</u>, 177 Wn. App. 644, 656-57, 312 P.3d 745 (2013)).

*A. Intransigence Finding*

Thomas first contends that the superior court erred by determining that an award of attorney fees was warranted due to his intransigence during the decree enforcement proceedings. We disagree.

In a dissolution proceeding, a party's intransigence provides an equitable basis for which a trial court may award attorney fees. <u>In re Marriage of Chandola</u>, 180 Wn.2d 632, 656, 327 P.3d 644 (2014). "Determining intransigence is necessarily factual, but may involve foot-dragging, obstructing, filing unnecessary or frivolous motions, refusing to cooperate with the opposing party, noncompliance with discovery requests, and <u>any other conduct that makes the proceeding unduly difficult or costly</u>." <u>Wixom v. Wixom</u>, 190 Wn. App. 719, 725, 360 P.3d 960 (2015) (emphasis added).

During the hearing on Brown's motion for enforcement, Thomas maintained that, when he took the disputed items in reliance on a property appraisal that he obtained, he was acting on the advice of his attorney at the time.[13] The record does not reflect that Thomas, or his former attorney, filed a declaration with the superior court swearing under penalty of perjury that the items in question were removed in reliance on the advice of legal counsel.

In regards to the appraisal, the record indicates that Thomas obtained and submitted the appraisal to the court during the dissolution trial as an exhibit. According to Thomas, this appraisal conclusively identified which property was his personal property for the purpose of interpreting the court's later-issued final dissolution decree.[14]

At the decree enforcement hearing, the commissioner sua sponte located the exhibit from the dissolution proceeding, displayed it for the parties, and considered it for the purpose of responding to Thomas's arguments during the hearing. The commissioner found that the appraisal identified the refrigerator, washer, and dryer as his personal property. However, the fact that Thomas may have submitted the appraisal to the trial court during the dissolution hearing does not establish that the court agreed that the refrigerator, washer, and dryer should be distributed as Thomas's personal property. Had the court agreed that the refrigerator, washer, and dryer were Thomas's personal property during the

---

[13] Thomas did not designate the appraisal in the clerk's papers for this appeal.
[14] Thomas did not designate the verbatim report of proceedings from the dissolution trial.

dissolution trial, the court could have listed them as such on Exhibit A&L as Thomas's personal property. It did not.

With regard to the remaining disputed items that Thomas removed from the residence, the commissioner determined, and Thomas conceded, that none of those items were even identified in the appraisal as his personal property.

The resulting order on enforcement read, in pertinent part, as follows:

> Ms. [Brown] also asks the court to award her $7,075 in attorney fees. The court is required to determine if the fees are reasonable under the circumstances for the work and time put in by counsel. This is a particularly nasty matter and Mr. Thomas' behavior, particular[l]y with the items other than the refrigerator and washer/dryer is so outrageous, an award of fees is warranted.

As discussed above, the superior court adopted the resulting order.

The superior court did not err in its intransigence determination. Although the court does not mention intransigence by name, it is evident that the court determined that Thomas was intransigent based on his conduct during the decree enforcement proceedings. Indeed, the commissioner highlighted the removal of items other than the refrigerator and washer/dryer—which included house fixtures. The record reflects his concession that, as for many of the disputed items, his reliance on that exhibit to justify his removal of the remaining disputed items was unavailing. Accordingly, the court did not err in determining that an award of attorney fees to Brown was warranted for Thomas's outrageous conduct that, without question, was obstructing and refusing to cooperate with the opposing party.

### B. Reasonableness of Attorney Fees Requested

Thomas next contends that the superior court erred in its determination of the reasonableness of the attorney fees requested by Brown. Because the court did not enter any findings in support of its reasonableness determination, we agree with Thomas.

"Trial courts must articulate the grounds for a fee award, making a record sufficient to permit meaningful review." Mullor v. Renaissance Ridge Homeowners' Ass'n, 22 Wn. App. 2d 905, 919, 516 P.3d 812 (2022) (citing White v. Clark County, 188 Wn. App. 622, 639, 354 P.3d 38 (2015)). In general, this means that the court must supply findings of fact and conclusions of law sufficient to permit a reviewing court to determine why the court awarded the amount in question. Id. at 919-20 (citing White, 188 Wn. App. at 639). Indeed, in determining the reasonableness of an attorney fee award, "'[c]ourts must take an *active* role in assessing the reasonableness of fee awards, rather than treating cost decisions as a litigation afterthought. Courts should not simply accept unquestioningly fee affidavits from counsel.'" View Ridge Ests., 30 Wn. App. 2d at 647 (quoting Berryman, 177 Wn. App. at 657). Therefore, our Supreme Court has held that findings of fact and conclusions of law are required to establish a record on review to support a fee award. Mahler v. Szucs, 135 Wn.2d 398, 435, 957 P.2d 632 (1998). The appropriate remedy if the trial court does not make findings of fact and conclusions of law supporting the attorney fee award is to remand to the trial court for entry of proper findings and conclusions. Mullor, 22 Wn. App. 2d at 920 (citing White, 188 Wn. App. at 639).

Here, prior to the February 2024 hearing before the superior court commissioner on Brown's enforcement motion, Brown's legal counsel provided an amended attorney fee declaration. The declaration provided a several-page table detailing the dates, timekeepers, hours, rates, amounts, and narratives associated with the services that he and his paralegal had provided therein. In response, Thomas raised several objections to the reasonableness of the fee award, such as including clerical work.[15] In issuing its order on enforcement following the hearing, the commissioner stated only as follows with regard to the reasonableness of the award: "The court concludes that the fees requested are reasonable under the circumstances." The superior court adopted this determination without making additional findings based on the record before it.

The superior court erred. A superior court "must show how the court resolved disputed issues of fact and the conclusions must explain the court's analysis." Berryman, 177 Wn. App. at 658. The superior court did not do so here, and the record does not allow for a proper review of these issues. Mayer v. City

---

[15] "Our Supreme Court has held that 'reasonable attorney fees' includes reasonably, necessary expenses of litigation." N. Coast Elec. Co. v. Selig, 136 Wn. App. 636, 643, 151 P.3d 211 (2007) (quoting Panorama Vill. Condo. Owners Ass'n Bd. of Dirs. v. Allstate Ins. Co., 144 Wn.2d 130, 142, 26 P.3d 910 (2001); Louisiana-Pac. Corp. v. Asarco, Inc., 131 Wn.2d 587, 605, 934 P.2d 685 (1997) (Sanders, J., concurring)); accord Weeks, 122 Wn.2d at 151 (included in reasonable attorney fees is "the amount of time that it would take a competent practitioner to recognize the [] issue, research the relevant law, discover the pertinent facts, and then prepare, file and prevail upon" the motion in question). Conversely, "'compensation for preparing pleadings for duplication, preparing and delivering copies, requesting copies, and obtaining and delivering a docket sheet'" is not within the realm of "'reasonable attorney fees.'" N. Coast Elec., 136 Wn. App. at 644 (quoting Absher Constr. Co. v. Kent Sch. Dist., 79 Wn. App. 841, 845, 905 P.2d 1229, 917 P.2d 1086 (1995)). Additionally, if certain requirements are established, "the services of a 'qualified legal assistant' may be included in an attorney fee award." Id. at 644.

of Seattle, 102 Wn. App. 66, 82-83, 10 P.3d 408 (2000). Thus, the trial court abused its discretion. We therefore must remand this matter "for the entry of proper findings of fact and conclusions of law that explain the basis" for the reasonableness of the attorney fee award. View Ridge Ests., 30 Wn. App. 2d at 648.[16] We note that, if the superior court determines that, in order to resolve the question of the reasonableness of the attorney fee award, evidence in addition to that which was presented to the commissioner becomes necessary, the superior court shall remand the matter to the commissioner to conduct further findings. Goodell, 130 Wn. App. at 388 (citing Moody, 137 Wn.2d at 992-93; Balcom, 101 Wn. App. at 59).[17]

### Request for an Award of Attorney Fees on Appeal

Brown requests an award of fees under RAP 18.1. However, she fails to provide us with statutory or decisional authority in support of her entitlement to an award of attorney fees on appellate review, in violation of RAP 18.1(a). She also

---

[16] We emphasize that, as in View Ridge Ests,
"[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." Fox v. Vice, 563 U.S. 826, 838, 131 S. Ct. 2205, 180 L. Ed. 2d 45 (2011). Indeed, "the determination of fees 'should not result in a second major litigation.'" Fox, 563 U.S. at 838 (quoting Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)). We encourage the superior court and the parties to keep as much in mind on remand.
30 Wn. App. 2d at 648-49.

[17] We note that, on June 7, 2024, three days after the filing of Thomas's notice of appeal, the superior court issued an order granting a motion for revision by Thomas that, based on the docket number, appears to have arisen from a later-filed motion for revision. Brown seeks to rely on this order to establish that Thomas's challenge to the attorney fee award arising from the superior court's May 2024 order is moot. However, Brown has not designated this June 2024 order for review, has not presented us with the motions and briefing that were before the superior court that prompted this order, and has not provided us with the judgment entered by the court following entry of this order. Therefore, we do not consider this June 2024 order in resolving the matter before us.

does not substantially prevail on all issues before us. Therefore, we deny her request.

## CONCLUSION

The superior court did not err by enforcing the disputed items' property division and valuation. Nor did the court err in determining that an award of attorney fees was warranted by Thomas's intransigence during the enforcement proceedings as to certain disputed items. However, the court did not adequately address Thomas's objections to the reasonableness of Brown's request for attorney fees and costs. Therefore, we remand this matter to the trial court to do so.

Affirm in part, reverse in part, and remand for further proceedings only as to the reasonableness of attorney fees.

_____
Coburn, J.

WE CONCUR:

_____        _____
Feldman, J.